*In re* ANDRÉS CARDONA VÁZQUEZ, querellado.

*Número:* O-77-82     *Resuelto:* 15 de noviembre de 1978

*Justo Gorbea Varona, Procurador General,* y *Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *Andrés Cardona Vázquez,* por su propio derecho, y *Benicio Sánchez Castaño, Benicio Sánchez Rivera, Migdalia Carmona* y *Frank Carbo,* abogados del querellado.

PER CURIAM: El Procurador General de Puerto Rico presentó querella sobre conducta profesional impropia contra el abogado notario Andrés Cardona Vázquez. Contestada la misma, designamos al Lcdo. Francisco Torres Aguiar Comisionado Especial con la encomienda de recibir prueba y formular determinaciones de hechos. Oportunamente, dicho funcionario nos ha rendido un completo y detallado Informe. Las excepciones del querellado no impugnan el mismo, sino más bien es un escrito dirigido a que atemperemos nuestra sanción disciplinaria.

A continuación relacionamos los cargos imputados y las conclusiones del Comisionado pertinentes a nuestro dictamen.

*Primero:* "El querellado, Lic. Andrés Cardona Vázquez, observó una conducta altamente impropia en relación a su cliente, la Srta. Fe Cepeda Gautier, consistente en lo siguiente: En el año 1970 la quejosa entregó al querellado una serie de escrituras y otros documentos acreditativos de compras hechas por el padre de la quejosa de terrenos que no aparecían inscritos en el Registro de la Propiedad, pagando al querellado la suma de $2,000.00 en efectivo para que le tramitara los correspondientes expedientes de dominio y demás escritos necesarios en el caso.

Posteriormente, el querellado se ausentó de Puerto Rico sin terminar el trabajo encomendado y sin devolverle parte alguna de los honorarios pagados ni devolverle los documentos que le habían sido entregados, dejando el caso abandonado en perjuicio de la quejosa.

La quejosa requirió al querellado en varias ocasiones la devolución de los mencionados documentos mediante cartas cursadas, una a la dirección conocida en Puerto Rico y otra a la dirección conocida en Estados Unidos, y, ninguna de ellas fue contestada ni los documentos fueron entregados.

Incumplió el licenciado Andrés Cardona Vázquez con el deber de defender los intereses de su cliente, Fe Cepeda Gautier, diligentemente, pues desatendió los asuntos que le fueron encomendados por ella. Igualmente su conducta merece reprobación y censura por no haberle entregado todos los documentos relacionados con el caso ni reembolsarle cantidad alguna de los honorarios que le fueron pagados por adelantado y no prestarle los servicios para los cuales fue contratado."

■ Sobre este cargo, coincidimos con el Comisionado en que el querellado realizó un sinnúmero de labores profesionales para la quejosa Srta. Gautier que valían "mucho más que los $2,000.00 por él recibidos." "[E]l querellado faltó al no cumplir con los requisitos del Registro y al no contestar las cartas de su cliente y del nuevo abogado de ésta. Su traslado a los Estados Unidos dos años después de la presentación de la escritura al Registro sin notificárselo a su cliente, no lo consideramos como una falta ya que él, equivocadamente pero sin mala fe alguna, creyó que su misión profesional quedó cumplida al entregarle a su cliente el talón de presentación

de la escritura al Registro sin pensar sobre la posible existencia de defectos para la inscripción."

*Segundo:* "El querellado, Lic. Andrés Cardona Vázquez, observó una conducta altamente impropia, irrespetuosa, de falta de sinceridad y de honradez en relación a su compañero de profesión, Lic. Aramis Lozada, consistente la misma en lo siguiente: El querellado, siéndole totalmente desconocido al Lic. Aramis Lozada, le llamó por teléfono aproximadamente en octubre de 1973 para pedirle (al Lic. Aramis Lozada) que se hiciese cargo de unos casos que él tenía y que por motivo de ausentarse (el licenciado Cardona Vázquez) de Puerto Rico para irse a vivir a los Estados Unidos no podía seguir haciéndose cargo de ellos y le quería referir los mismos. El licenciado Cardona Vázquez se comprometió a pasar por allá el próximo lunes para llevar los expedientes y discutirlos con el Lic. Aramis Lozada. Contrario a lo acordado, el lunes siguiente fue una señora a la oficina del Lic. Aramis Lozada quien se identificó como la esposa del Lic. Andrés Cardona Vázquez, y dejó allí una caja conteniendo 84 expedientes, comprometiéndose a pasar posteriormente por allá para recoger aquellos casos que el Lic. Aramis Lozada no aceptaba. Nunca volvió.

El Lic. Aramís Lozada procedió entonces a realizar un inventario y a examinar cada uno de los expedientes, encontrando que en ninguno de los casos había mociones de renuncia y, de hecho, en los pocos que asumió la representación legal, tuvo que hacerlo en unión de aquél. También supo que en la mayoría de ellos ya se habían cobrado honorarios, cosa que el licenciado Cardona Vázquez le había informado en contrario al llamarle por teléfono para referirle los casos.

El licenciado Aramis Lozada tuvo que llamar por teléfono y enviar cartas a aquellos clientes que tenían sus direcciones en los expedientes, para explicarles lo acontecido y para solicitarles que pasaran a recoger sus casos.

El Lic. Aramis Lozada también fue víctima del coraje de algunos de los clientes del Lic. Andrés Cardona Vázquez, pues sin su autorización el querellado dejó una nota en su oficina al ausentarse de Puerto Rico señalando que todos los casos él los había

dejado con el Lic. Aramis Lozada y que fueran allá a procurarlos, cuando ésto no era cierto."

---

*Tercero:* "El querellado, Andrés Cardona Vázquez observó una conducta inmoral e impropia en violación a la responsabilidad social y profesional de los abogados y a la conducta moral que se espera de todo miembro de la profesión legal en Puerto Rico, en relación a numerosos clientes, de los cuales tenemos conocimiento específico sobre 84 expedientes que abandonó en la oficina del Lic. Aramis Lozada. Su conducta consistió en lo siguiente:

A través de su esposa, el querellado envió 84 expedientes a la oficina del Lic. Aramis Lozada sin haber notificado jamás a sus clientes de que se proponía abandonar la jurisdicción de Puerto Rico ni haberles renunciado la representación legal tampoco.

Indujo también el querellado a equivocaciones a dichos clientes al dejar la nota en que les señalaba que todos los casos los había dejado con el Lic. Aramis Lozada, cuando la realidad fue que sólo le refería algunos de sus casos tal cual se lo señalara por teléfono, pues 'los otros casos los dejaría con unos abogados de la Parada 17', sin decir quienes eran éstos."

---

*Sexto:* "El Lic. Andrés Cardona Vázquez observó una conducta impropia y de menosprecio a este Honorable Tribunal al suministrarle información claramente errónea en su escrito titulado 'Moción' de fecha 18 de julio de 1976. Dicho abogado informó lo siguiente y citamos:

'c) Que al trasladarme a vivir en los Estados Unidos dejé mis casos pendientes con el Lic. Aramis Lozada, quien tenía sus oficinas localizadas en la Urbanización Jardínes de Country Club, de Carolina, Puerto Rico, quien se encargaría de entregar los documentos a mis exclientes, o a seguir con los mismos a su discreción.'

Mediante esta aseveración, el querellado pretende hacer creer al Tribunal el hecho de que cuando él decidió irse de Puerto Rico,

allá para octubre de 1973, él se ocupó de conseguir a sus clientes una representación legal adecuada antes de su partida, y, que además responsablemente dejó todos los documentos y expedientes relacionados en la oficina del Lic. Aramis Lozada. Todo esto es falso. En el segundo cargo se explican los pormenores referentes a este asunto. En cuanto a su expresión de 'sus ex-clientes', nuevamente el licenciado Cardona Vázquez incurre en una conducta reprobable al expresarse de ese modo. La relación de abogado y cliente existía porque el querellado era el abogado de estas personas al momento de abandonarlas y de trasladarse definitivamente a los Estados Unidos. Jamás él notificó a sus clientes de su partida ni de su propósito de renunciarles la representación legal; tampoco obtuvo el permiso y la autorización del Tribunal para retirarse de los casos ya radicados."

■ En torno a estos cargos, consolidados correctamente por el Comisionado, el Informe consigna las siguientes apreciaciones que aceptamos: "Concluimos que la conducta del querellado no fue la correcta al enviar los expedientes de los casos que atendía a otro abogado a quien ni siquiera conocía; al no ver a dicho abogado personalmente antes de salir hacia Rochester, N.Y.; al no notificar debidamente a cada uno de sus clientes de que iba a dejar de ser su abogado, y seleccionar uno sin conocimiento ni consentimiento de dichos clientes que depositaron su confianza en él directamente y no en un tercero; también se le ocasionó angustias y molestias al Lic. Lozada al enfrentarse algunos de los clientes del querellado a él y tratar de responsabilizarlo por lo ocurrido."

*Quinto:* "El Lic. Andrés Cardona Vázquez observó una conducta inmoral e impropia y en violación a la responsabilidad profesional que tiene todo abogado hacia los tribunales, sus compañeros y las partes envueltas en todo caso por su insostenible conducta negligente en el caso de Luis Villegas et al vs. Municipio de Guaynabo, Sobre Reclamación de Salarios, Civil Núm. 70-432, consistiendo en lo siguiente:

El día 24 de mayo de 1972, se nombró al Lic. Andrés Cardona Vázquez Comisionado Especial en el citado caso encomendándosele gestiones propias de su cargo y a solicitud de él mismo se le entregaron por la parte demandada documentos relevantes al caso como nóminas y tarjetas de asistencia. El día 12 de noviembre de 1974 se notificó al Comisionado y a las partes una orden de señalamiento de conferencia preliminar en la cual el Comisionado debía informar al Tribunal cuál había sido la gestión realizada por él durante todo el período transcurrido desde su designación. El Comisionado, Lic. Andrés Cardona Vázquez no compareció.

Se hicieron numerosas gestiones para localizarlo a la última dirección conocida, pero todas las gestiones fueron infructuosas ya que para esta época el Lic. Andrés Cardona Vázquez había abandonado la jurisdicción de Puerto Rico trasladándose a vivir permanentemente a los Estados Unidos desde octubre de 1973.

De los documentos que le fueron entregados al Licenciado Cardona Vázquez sólo parte de ellos fueron recuperados en casa del padre del querellado y tuvo que procederse a la vista del caso en sus méritos con la limitación de que la prueba documental estaba incompleta."

█ En torno al cargo precedente, el Comisionado expresa:

"De la prueba admitida, concluimos que el abogado querellado asumió una conducta de irresponsabilidad en el cumplimiento de sus deberes como comisionado especial, labor que se le encomendó en 24 de mayo de 1972 por estipulación de las partes litigantes . . . . [E]l propio abogado querellado, en su moción ante este Honorable Tribunal, fechada 18 de julio de 1976, admite tácitamente el cargo que indirectamente se le imputa al decir 'que no fue notificado personalmente para la vista del 12 de noviembre de 1974 ni para ninguna vista posterior a octubre de 1973, ya que desde esa fecha se encuentra fuera de Puerto Rico . . . .' Dice en esa misma moción 'que la última comparecencia de este abogado en el caso 70-432 lo fue en mayo de 1973 . . .' y 'que al trasladarme a vivir en [sic] los Estados Unidos dejé mis casos pendientes con el Lic. Ara-

mis Lozada . . . quien se encargaría de entregar los documentos a mis ex-clientes, o a seguir con los mismos a su discreción.' Estas manifestaciones del querellado no le relevan de la responsabilidad que asumió para con la Sala de Bayamón del Tribunal Superior que depositó su confianza en él al designarle comisionado especial en el referido caso 70-432; era su deber el solicitar, por razones sumamente meritorias, el que se le relevara de continuar actuando como tal comisionado especial y no abandonar la misión que se le encomendó hasta tanto el tribunal lo hubiera excusado expresamente, con conocimiento de las partes litigantes que estipularon su designación. No se trataba de una encomienda que pudiera él pasarla a otro abogado, como alega él que hizo, ya que carecía de autoridad para hacerlo. También, en el curso de la vista de la querella, el querellado admitió a preguntas nuestras, y por esta actuación lo elogiamos, que él se ausentó de Puerto Rico sin ser relevado de sus funciones como comisionado especial. Además, la evidencia documental que alega el abogado querellado que fue localizada en su casa 'debidamente archivada y protegida y ordenada', debió ser entregada al tribunal antes de irse de Puerto Rico y luego de ser excusado del cumplimiento de sus deberes como comisionado especial. Finalmente, del Exhibit XIV, que es la Resolución del Tribunal, Sala de Bayamón, de 22 de abril de 1976 surge, contrario a lo alegado por el abogado querellado, que éste 'tampoco entregó la importante documentación que custodiaba' y que 'los documentos recuperados constituyen un pequeño grupo de nóminas las cuales . . . le fueron entregadas por don Víctor Cardona, señor padre del Comisionado. El resto de la prueba documental no pudo ser localizada' . . . . Repetimos que en este Quinto Cargo no se le imputa al querellado directamente la falta principal en que incurrió: el abandonar su misión judicial como comisionado especial sin solicitud alguna al tribunal para que lo excusara de seguir actuando como tal comisionado

y sin orden alguna a esos efectos. La cuestión relativa a la desaparición de algunos documentos a pesar de la Resolución de la Honorable Juez Cerezo de 22 de abril de 1976 (Exh. XIV estipulado, supra) en cuanto a que el querellado 'no entregó la importante documentación que custodiaba', no nos ha convencido. Tenemos serias dudas de si el querellado entregó o no toda la documentación que se le dio. De habérsele dado toda, no tenemos ninguna razón lógica para explicarnos el porqué desee él no entregarla ya que de nada le serviría, y si se le perdió, no creemos que ese sea motivo suficiente para tomar acción en contra suya; menos aún cuando no existe prueba directa de la pérdida alegada."

*Séptimo:* "El querellado, Lic. Andrés Cardona Vázquez, observó una conducta inmoral e impropia y en violación a la responsabilidad social y profesional de los juristas y a la conducta moral que se espera de todo miembro de la profesión legal en Puerto Rico en su relación con su cliente Teodosio Torres Robles. Esta conducta consistió en lo siguiente:

El señor Torres Robles contrató al querellado para que lo representara en el caso de Teodosio Torres Robles y otra v. W. Clay Jackson Enterprises, Inc., Civil Núm. 68-3188, sobre cobro de dinero. Pasados dos años dicho abogado 'se había desaparecido', como expresa el querellante. Al visitar en cierta ocasión la oficina del licenciado Cardona Vázquez vio un letrero que decía que procuraran los casos en la oficina del Lic. Aramis Lozada. Al visitar la oficina de dicho abogado éste le informó que él no tenía los casos del licenciado Cardona Vázquez. Por más de cuatro meses estuvo el señor Torres Robles tratándose de comunicar con los padres del licenciado Cardona Vázquez para inquirir sobre su paradero y nada logró. Posteriormente se dirigió al Colegio de Abogados a ver si allí lograban conseguir la dirección del licenciado Cardona Vázquez y allí lo que le recomendaron fue que contratara otro abogado en vista de que el suyo no aparecía.

En busca de ayuda don Teodosio Torres fue a Servicios Legales de San Juan y éstos, luego de solicitar permiso al tribunal

para dejarlos intervenir en el caso, lograron representar a don Teodosio. Dichos abogados realizaron varias gestiones en su beneficio, inclusive gestionar un embargo por la suma de $10,500.00 a favor de don Teodosio en el citado caso.

Sorpresivamente regresó el licenciado Cardona Vázquez y les exigió a los abogados de Servicios Legales que renunciaran al caso, pues él se haría cargo de él. Don Teodosio nunca vio al licenciado Cardona Vázquez y se enteró de la venida de él por la moción de renuncia de representación legal que recibió de los licenciados de Servicios Legales.

El día 6 de junio de 1975 Don Teodosio fue al Tribunal a inquirir sobre el status de su caso y allí le informaron que con motivo del embargo se había expedido el cheque Núm. 989 a nombre de él y su esposa por la suma de $7,338.19 como pago parcial de la sentencia ejecutada. Dicho cheque le fue entregado al Lic. Andrés Cardona Vázquez por el Alguacil Nicolás Torres Rentas. Como el licenciado Cardona Vázquez no se comunicó con su cliente, Teodosio Torres Robles, ni le entregó el mencionado cheque, Don Teodosio, luego de asesorarse, procedió a ponerle una cancelación de pago al cheque.

Días después de ponérsele la cancelación de pago al cheque, el querellado envió un escrito al Tribunal Superior señalando que devolvería el cheque tan pronto lo recibiera del Banco donde fue depositado (y de hecho, posteriormente lo devolvió).

Cuando el Lic. Andrés Cardona Vázquez devolvió el cheque, el mismo apareció endosado con los siguientes dos nombres: Teodosio Torres Robles y Victoria Vélez de Torres. Ambas personas negaron rotundamente haber firmado el cheque y de hecho el estudio caligráfico que se realizó definitivamente concluyó que los endosos que aparecen en el cheque no fueron hechos por las personas de quienes se tomaron muestras caligráficas. Se examinaron muestras caligráficas del Sr. Teodosio Torres Robles y de la Sra. Victoria Torres de Vélez, hija de Don Teodosio, cuyo nombre se expresa erróneamente en el cheque como Victoria Vélez de Torres.

Examinado el cheque en cuestión, en la parte posterior del mismo, aparte de las firmas, se puede leer el sello del Banco donde fue depositado y el nombre de éste: Lincoln First Bank of Rochester. Por tanto, dicha expresión nos lleva necesariamente a la conclusión de que el Lic. Andrés Cardona Vázquez re-

cogió el cheque y se lo llevó consigo a Rochester Nueva York donde lo depositó. (Por cierto, la última dirección conocida que tuvimos de este abogado es: 20 Rugby Ave., Rochester, New York.)

El Lic. Andrés Cardona Vázquez, aparte de retenerle a su cliente Teodosio Torres Robles una suma de dinero pagada en cheque sin el conocimiento y consentimiento de su cliente, también le hizo sufrir a éste innumerables molestias por la representación legal negligente que le brindó hasta el punto de abandonarle el caso definitivamente."

■ La gravedad de la conducta observada es aparente. Como concluye el Comisionado, "[e]ntendemos que el abogado querellado cumplió con su misión profesional para con su cliente únicamente hasta obtener la ejecución de la sentencia. No podemos concluir que él le abandonó el caso definitivamente, según se le imputa en el cargo. Lo que sí hizo contrario a las obligaciones y responsabilidades de un abogado para con su cliente, con los tribunales y con la profesión de abogado en general, fue el haberse llevado consigo el cheque #989 de $7,338.19, para Rochester, New York, haberlo endosado y haberlo depositado en su cuenta en un banco de Rochester, acto punible desde el punto de vista criminal; la devolución de dicho cheque no excusa la conducta del abogado querellado. Surge del expediente que dicha devolución fue por virtud de la Orden de 25 de junio de 1975 dictada por el Tribunal. (Exh. XXVIII estipulado.)

■ "La conducta del querellado no sólo lesionó los mejores intereses de la administración de la justicia, sino que además, causó graves perjuicios a su cliente Torres Robles quien se vio abandonado al irse el querellado hacia Rochester, N.Y., sin notificarle de su traslado y mantenerse en comunicación con dicho cliente quien se vio forzado a recurrir a Servicios Legales de San Juan para que continuaran representándole. Dicha conducta constituye uno de los ejemplos más claros de la violación por parte de un abogado de su obligación de re-

presentar al cliente con fidelidad, lealtad y diligencia. Constituye, además, una inexcusable violación de su deber de mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso cuya atención le ha sido encomendada."

*Octavo:* "El Lic. Andrés Cardona Vázquez observó una conducta inmoral e impropia y altamente reprochable en relación a su cliente Teodosio Torres Robles al radicarle, dentro del mismo pleito anteriormente aludido en el Sexto Cargo, una acción en cobro de honorarios. Veamos:

Cuando se le puso la cancelación de pago al aludido cheque núm. 989, dicho abogado informó que devolvería el mismo tan pronto lo recibiera del Banco donde fue depositado, pero en dicho escrito alegó que el señor Torres Robles le adeudaba honorarios. Don Teodosio Torres Robles tuvo que solicitar representación legal para defenderse y fue el Lic. Jorge González Nieves de Servicios Legales de San Juan, quien lo representó en este incidente. Lo que se había acordado entre Don Teodosio y el querellado era dividir en partes iguales cualquier cantidad recuperada sobre $115,000.00. Pero, como sólo se condenó a la demanda [*sic*] al pago de $10,500.00, el querellado le había dicho a don Teodosio que cobraría los honorarios de la parte demandada. Informó el Lic. Jorge González Nieves, a la Oficina del Procurador General que el señor Torres Robles, posteriormente pagó al querellado la suma de $500.00 por concepto de honorarios de abogado.

Al demandar al Sr. Teodosio Torres Robles en cobro de honorarios, el Lic. Andrés Cardona Vázquez violó los criterios que se exigen para radicar este tipo de acción y que son que las mismas se incoen sólo si es para evitar injusticias, imposiciones o fraudes."

■ El Comisionado no encontró probado este cargo, pero sí censurable que ". . . luego de la conducta observada por el querellado para con su cliente, a la cual se refiere el Séptimo Cargo, al no defender los intereses de dicho cliente diligen-

temente, en forma responsable, al abandonarlo sin mantenerle informado del desarrollo de su caso y, por el contrario, haberse apropiado y depositado en una cuenta bancaria suya, fuera de Puerto Rico, el cheque importe de una sentencia, cheque que endosó fraudulentamente, y proceda más tarde, al cumplir con la orden judicial de devolver el cheque luego de una cancelación de pago (*stop payment*) dada por su cliente al banco en que fue depositado, proceda a radicar una demanda en cobro de honorarios en contra de quien podemos denominar más correctamente su 'víctima' que su 'cliente'. Definitivamente estamos de acuerdo con el querellado en su derecho a demandar a un cliente que no quiere honrar el convenio de honorarios pactado, pero como dice el Canon [14 que regía para estos hechos] esas demandas solamente deben establecerse 'para evitar injusticias, imposiciones o fraudes'; nunca en situaciones como en la del cargo [caso] de autos."

---

*Noveno:* "El querellado, Andrés Cardona Vázquez, observó una conducta inmoral y reprobable en relación a su cliente el Sr. Barreto Domínguez al no ofrecerle una representación profesional diligente, ni defender sus intereses en el caso para el cual lo contrató. Tampoco le informó jamás sobre las gestiones que realizaba. Dicha conducta fue la siguiente:

En febrero 17 de 1976 el Sr. Justino Barreto Domínguez cursó una carta a esta Oficina para quejarse de la conducta profesional del Lic. Andrés Cardona Vázquez. Dicha carta vino acompañada a su vez con copias de cartas de distintos organismos a donde [*sic*] el señor Barreto había acudido a presentar su queja contra este abogado. Son ellos: La Administración de los Tribunales, el Tribunal Supremo y la Comisión de Etica del Colegio de Abogados.

El día 26 de octubre de 1976 citamos al señor Justino Barreto a nuestras Oficinas procediendo a tomarle declaración jurada el mismo día. Informó en síntesis el quejoso lo siguiente:

Que allá para el 22 de noviembre de 1972 él contrató al Lic. Andrés Cardona Vázquez para que lo representara en una acción

de daños y perjuicios con motivo de que a él se le había acusado injustamente por unos empleados del Municipio de Carolina y en vista de que salió absuelto procedió a radicar la correspondiente demanda de daños y perjuicios. (Caso Civil Núm. 73-6767 V.) Alega el señor Barreto que él le pagó al licenciado Cardona Vázquez la suma de setenta y cinco (75) dólares para los gastos iniciales de la tramitación del caso.

Nos informa el señor Barreto Domínguez que el Lic. Andrés Cardona Vázquez 'le abandonó' su caso y, de hecho al momento de prestar la declaración jurada ante nos, el querellante ignoraba el status del mismo. Procedimos a recomendarle el que visitara la Secretaría del Tribunal correspondiente e inquiriera sobre su caso. Efectivamente, así lo hizo él, y, a los pocos días nos trajo copia de la Orden y Sentencia en la cual se dispone de su caso, procediéndose al archivo del mismo a tenor con la Regla 11 de las Reglas para la Administración del Tribunal de Primera Instancia. Es en este momento, al explicársele el significado de los mencionados documentos, que el Sr. Justino Barreto Domínguez se entera de que su caso había sido archivado.

También nos informó el señor Barreto Domínguez en su declaración, que sin saber nada sobre el status de su caso ni del Lic. Andrés Cardona Vázquez, recibió una carta de un tal Lic. Aramis Lozada invitándole a pasar por sus Oficinas. El señor Barreto visitó la Oficina del citado abogado y allí se le informó que su caso, entre otros muchos, había sido dejado por el Lic. Andrés Cardona Vázquez en una caja de cartón en aquella oficina. El Lic. Aramis Lozada le hizo entrega del expediente de su caso, luego de firmar el recibo correspondiente. Añade Don Justino que entonces él se llevó el expediente para su casa sin saber qué hacer, pues el abogado nunca le informó de las gestiones que realizó en su beneficio. Apuntó el querellante que le cursó cartas preguntándole sobre el status de su caso y nunca se las contestó."

■ Sobre este cargo se consideró probado que: "Definitivamente, el querellado dejó a su cliente Barreto Domínguez huérfano de la representación legal que había asumido, habiéndole abandonado su reclamación y sin darle información alguna en relación con la misma, ni contestando sus comunicaciones inquiriendo sobre su caso. Tampoco presentó moción renunciando la representación profesional de su clien-

te en la forma en que lo exige el Canon #20 del Código de Etica Profesional, ya en vigor a la fecha de los hechos (desde 24 de diciembre de 1970) [; y que] [e]l querellado dejó a su cliente en completo estado de indefensión y le hizo perder todo derecho que pudiera haber tenido—si alguno—a su reclamación, habiéndose enterado dicho cliente del archivo definitivo de su caso mucho tiempo después de haber vencido el término para solicitar algún remedio para reactivar dicha reclamación."

---

*Décimo:* "El Lic. Andrés Cardona Vázquez incurrió en una conducta inmoral e impropia y de falta de respeto y consideración tanto hacia su cliente Dionisio González como hacia el Tribunal y las partes envueltas en el caso de Dionisio González y otro vs. Holsum Bakery y otro, sobre Daños y Perjuicios, Civil Núm. 71-2207. Dicha conducta consistió en lo siguiente:

El Sr. Dionisio González contrató al querellado allá para el año 1971, para que lo representara en una acción de Daños y Perjuicios. Dicho caso se radicó en el Tribunal Superior, Sala de Bayamón como el Civil Núm. 71-2207, supra. El señor González le pagó los gastos propios de la radicación de un caso y en cuanto a honorarios acordaron que él le pagaría la tercera parte 'de lo que se sacara'. Allá para el año de 1972, un día el licenciado Cardona Vázquez llamó por teléfono a casa del señor González y le dijo a la esposa de aquel que 'pronto les daría una sorpresa', pues él tenía ya una oferta de la Compañía de Seguros. Expresó el señor González, en la declaración jurada que se [le] tomara, en esta Oficina, que efectivamente les dio una sorpresa, pues desde ese día en adelante nunca más supieron de él.

Tanto él como su esposa y otro abogado amigo de los esposos González, el licenciado Márquez Lizardi, trataron e hicieron numerosas gestiones para localizar al querellado, pero nada lograron. Finalmente un día fueron a la oficina del querellado y allí vieron una nota en la puerta, la que informaba que los casos del licenciado Cardona Vázquez los tenía el Lic. Aramis Lozada. Al comunicarse con el licenciado Lozada, éste les dijo que él no tenía el caso y que el licenciado Cardona Vázquez se había ido para Nueva York.

En cuanto al expediente del caso informó el señor González que él le había hecho entrega al licenciado Cardona Vázquez de toda la información relacionada con el mismo como gastos médicos, de hospitalización, de viajes . . ., etc., y nunca se pudo recuperar ninguno de los documentos que le fueron entregados ni el expediente del caso tampoco."

■ Sobre el particular se concluyó que ". . . el abogado querellado abandonó, sin justificación alguna, la representación de su cliente, la demandante, desde el comienzo de su representación, habiendo dejado a dicho cliente huérfano de representación legal al desaparecer y no haberle notificado su abandono, ni haberle contestado cartas relacionadas con el caso cuya atención se le encomendó, ni haberle devuelto los documentos evidenciarios que le habían sido confiados, los cuales nunca pudieron localizarse. Su conducta no sólo motivó la imposición de sanciones a su representada y obstruyó la buena y pronta marcha de la justicia, sino que también le causó daños irreparables a dicha representada al extremo de que la reclamación, de naturaleza sencilla, se ha dilatado en ventilarse por un período de años considerable. A la fecha de la vista de la querella, el entonces menor Iván González Román, demandante cuya caída dio lugar a dicha reclamación es, desde hace un año aproximadamente, persona mayor de edad ya que, según se alega en la demanda, él nació en 30 de julio de 1956. 11) El querellado ha incumplido, en relación con el caso que motiva esta querella, con las normas mínimas que se le exige a un abogado en cuanto a sus obligaciones para con su cliente y la conducta moral esperada de todo miembro de la profesión legal. Su irresponsabilidad no sólo ha perjudicado los intereses de un cliente sino que también ha lesionado el buen nombre y prestigio de la clase togada." [sic]

*La suma total de los cargos probados según expuestos reflejan una conducta profesional incompatible con los prin-*

*cipios establecidos en varios cánones de ética.*([1]) *Su proceder justifica la suspensión del ejercicio de la profesión de abogado. Se dictará la correspondiente sentencia.*

---

([1]) Cánones 13, 17, 18, 19, 20, 23, 25, 35 del Código de Ética vigente desde el 24 de diciembre de 1970 y el canon número 12 de los anteriores.