per curiam:
El 13 de julio de 2004 la señora María D. Álamo Figueroa presentó una queja contra el Ledo. Samuel Nieves Rodríguez ante este Tribunal.(1) En dicha queja, alegó que, luego de sufrir dos accidentes automovilísticos, uno en el 2001 y otro en el 2002, acudió a la oficina del licenciado Nieves Rodríguez para que éste presentara las correspondientes demandas en daños y perjuicios en rela-ción con los mencionados accidentes. Álamo Figueroa sos-tiene que el licenciado Nieves Rodríguez aceptó represen-tarla y, a su vez, le requirió doscientos dólares para comenzar el trámite del primer caso, los cuales ella satis-fizo entregándolos a la secretaria del abogado.
Luego de satisfecha la mencionada suma de dinero, Álamo Figueroa alega que el licenciado Nieves Rodríguez nunca más se comunicó con ella. Además, indicó que las veces en las cuales intentó comunicarse con el abogado *132 para conocer el status de su caso, la secretaria le informaba que éste no se encontraba en la oficina. Ante dicha situa-ción, el 23 de junio de 2003 Álamo Figueroa le envió una carta certificada al licenciado Nieves Rodríguez, de la cual no recibió respuesta.
Álamo Figueroa también sostiene que en las pocas oca-siones en las cuales logró comunicarse con el licenciado Nieves Rodríguez, éste se dirigió a ella de forma grosera. Por dicha razón, Álamo Figueroa le solicitó al aquí quere-llado que le devolviera los doscientos dólares que ella había adelantado para la tramitación del primer caso. Alega tam-bién que el licenciado Nieves Rodríguez le indicó que cuando tuviese el dinero se lo devolvería.
El licenciado Nieves Rodríguez contestó la queja presen-tada en su contra. En su contestación explicó que su prác-tica mayormente se ha enfocado en las áreas de derecho de familia y de derecho criminal. Por dicha razón, cuando en su oficina se presenta un potencial cliente con un caso so-bre daños y peijuicios, él acostumbra referirlo, previa au-torización del cliente, a unos abogados de su confianza, quienes analizan la procedencia de la causa de acción y deciden si aceptan el caso o no.(2)
El licenciado Nieves Rodríguez indicó, además, que en el 2002 confrontó problemas con su secretaria, quien lle-vaba laborando para éste por espacio de once años. Dicha secretaria defraudó a varios potenciales clientes al retener, sin autorización, los casos de daños y perjuicios que debie-ron ser referidos; al retener, además, los casos que los li-cenciados Ruiz y Reyes devolvían, por éstos estimar que no tenían mérito, informándole falsamente a los clientes que sí se había asumido la representación legal, y por último, al requerirle a los clientes dinero a nombre de Nieves Ro-dríguez para sufragar los alegados costos de tramitar el caso.
*133 Específicamente en cuanto a la queja que presentara Alamo Figueroa, Nieves Rodríguez aseguró haberle infor-mado el procedimiento que él suele seguir en relación con los casos de daños y perjuicios, y que ésta lo aceptó. En vista de ello, el licenciado Nieves Rodríguez sostuvo que le refirió el primer caso de Álamo Figueroa a los licenciados Ruiz y Reyes, quienes decidieron no aceptarlo por entender que no existía nexo causal entre la alegada condición física de ésta y el accidente ocurrido. Nieves Figueroa indicó que, acto seguido, instruyó a su secretaria a que citara a Álamo Figueroa para devolverle su expediente.
Nieves Rodríguez sostuvo, por último, que luego de im-partir dichas instrucciones, le dio seguimiento al asunto, a lo que su secretaria le informó que Álamo Figueroa había recogido su expediente mientras él se encontraba fuera de la oficina. Por esta razón, el querellado entendió que dicho asunto había concluido sin necesidad de seguimiento ulterior.
El 27 de diciembre de 2004 referimos la queja a la Ofi-cina del Procurador General para que llevaran a cabo la investigación pertinente. Luego de los trámites de rigor, instruimos al Procurador General para que procediera con la querella. El 20 de marzo de 2006 se presentó formal-mente la querella contra el licenciado Nieves Rodríguez. En ella, el Procurador General le imputó haber violado los Cánones 18, 19 y 26 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Contestada la querella por el licenciado Nieves Rodríguez, el 30 de junio de 2006 designamos al ex Juez Superior del Tribunal de Primera Instancia, Ledo. Wilfredo Alicea López, para que en calidad de Comisionado Especial y en presencia de las partes, recibiera prueba y rindiera un informe con sus determinaciones de hechos y recomendaciones.
Posteriormente, el 28 de octubre de 2006, la señora Álamo Figueroa expresó que interesaba retirar la queja que originalmente había presentado ante este Tribunal *134 contra Nieves Rodríguez. El 7 de noviembre de 2006 las partes pactaron ante el comisionado Alicea López someter el caso por el expediente. El 30 de enero de 2007 el Comi-sionado Especial emitió un informe en el cual recomendó el archivo y sobreseimiento de la presente querella. Con el beneficio de dicho informe, procedemos a resolver.
HH
En reiteradas ocasiones hemos sostenido que todo abogado tiene el deber de defender diligentemente los intereses de su cliente, de acuerdo con el Canon 18 del Código de Etica Profesional, ante. In re Laureano Molina, 161 D.P.R. 58 (2004); In re Laborde Freyre, 159 D.P.R. 697 (2003); In re Grau Díaz, 154 D.P.R. 70 (2001); In re Águila López, 152 D.P.R. 49 (2000); In re Arroyo Rivera, 148 D.P.R. 354 (1999). Según el referido canon, “[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable”. 4 L.P.R.A. Ap. IX, C. 18.
Como corolario de lo anterior, el abogado debe mantener informado al cliente en cuanto a los asuntos importantes que surjan del caso una vez decide asumir la representa-ción profesional de éste. Por dicha razón el Canon 19 de Etica Profesional, ante, establece que “ [e] 1 abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado”. No hacerlo viola la ética profesional. In re Acosta Grubb, 119 D.P.R. 595 (1987); In re Rosario, 116 D.P.R. 462 (1985); In re Cardona Vázquez, 108 D.P.R. 6 (1978).
Conforme a dicho canon hemos expresado que “[e]l deber de informar al cliente es un elemento impres- *135 cindible de la relación fiduciaria del abogado y el cliente”. In re Alonso Santiago, 165 D.P.R. 555, 563 (2005). Véase In re Hernández Nazario, 159 D.P.R. 63 (2003). Consecuente-mente, en numerosas ocasiones hemos sostenido que si un abogado mantiene a su cliente ajeno a las incidencias de su caso, ello constituye una violación al Canon 19, ante, y al proceso de impartir justicia en general. In re Laborde Fre-yre, ante.
Referente a la diligencia que el abogado debe desplegar al realizar sus tareas, el Canon 26 del Código de Ética Profesional, ante, en lo pertinente, dispone que “[e]s impropio de un abogado relevarse de responsabilidad por actos u omisiones negligentes en su gestión profesional”.(3) Ello no obstante, este canon no impide que un abogado indemnice extrajudicialmente a un cliente si en el desempeño de su función actuó negligentemente. Sin embargo, un abogado no puede liberarse de dicha responsabilidad con antelación a la tramitación del caso. In re Pagán Ayala, 117 D.P.R. 180 (1986).
En ausencia de interés público mayor, cuando un abogado incurre en negligencia profesional pero satisface el perjuicio sufrido por el cliente, el asunto puede ser objeto de archivo. No obstante, el ejercicio final de la jurisdicción disciplinaria de este Tribunal no depende de la existencia de un acuerdo de transacción entre el abogado y el cliente perjudicado. In re Pagán Ayala, ante.
*136 II
En el caso ante nuestra consideración, el licenciado Nieves Rodríguez pagó a Álamo Figueroa cinco mil dólares con el propósito de resarcir los daños que ésta pretendía reco-brar en al menos uno de los casos que en su día quiso presentar. En vista de ello, Álamo Figueroa presentó una solicitud de desistimiento en la cual expresó no tener inte-rés alguno en continuar con la presente querella. Mani-festó, además, que está convencida que la falta de comuni-cación entre ella y el licenciado Nieves Rodríguez se debió al problema que éste confrontó con su secretaria.
Resulta meritorio, entonces, abundar sobre la seriedad de la situación que se alega propició la secretaria del licen-ciado Nieves Rodríguez. Como expusiéramos anterior-mente, se alega que ésta incurrió en un esquema de fraude el cual perjudicó a múltiples clientes de Nieves Rodríguez. En síntesis, conforme informa Nieves Rodríguez, dicho es-quema consistió en requerir dinero a clientes con el falso pretexto de que éste había aceptado llevar el caso y que, para tramitar la causa de acción, necesitaba un adelanto monetario. Para ocultar sus acciones, se alega que dicha empleada se apropiaba o escondía expedientes, borraba re-gistros, falsificaba documentos y realizaba falsas represen-taciones, entre otras cosas.
Dicha versión es corroborada en parte por el hecho de que Nieves Rodríguez, una vez supo de las actuaciones de su secretaria, la despidió inmediatamente e informó a la Fiscalía del Distrito de Carolina de la situación. Fue de esa intervención de la Fiscalía que Nieves Rodríguez supo que el Ministerio Público había comenzado una investigación, la cual se inició luego de que otras personas alertaran a las autoridades al respecto. Tras aproximadamente un año de investigación, el Ministerio Público exoneró al licenciado Nieves Rodríguez de toda participación en los actos come-tidos por su secretaria.
*137 Entretanto, el licenciado Nieves Rodríguez se dio a la tarea de identificar a los clientes perjudicados por los refe-ridos actos. En la medida que pudo, tomó acción correctiva en protección de los derechos de éstos, de manera que re-embolsó dinero pagado y realizó encomiendas profesiona-les por las cuales originalmente lo pretendieron contratar. No obstante sus esfuerzos, el licenciado Nieves Rodríguez asegura no haberse topado con indicio alguno de que Álamo Figueroa figurara entre los clientes perjudicados, razón por la cual no la contactó.
Nieves Rodríguez sostiene que supo de la situación particular de Álamo Figueroa tras recibir una llamada de ésta en enero de 2003. A raíz de dicha comunicación, Nieves Rodríguez aceptó presentar una demanda por el segundo accidente sufrido por Álamo Figueroa. Ello no obstante, a Nieves Rodríguez le resultó imposible emplazar a la parte demandada y al tratar de comunicar dicha situación a Álamo Figueroa, tampoco pudo localizarla.(4) Posterior-mente, Álamo Figueroa presentó la queja ante nos.
Luego de analizar el expediente, resulta razonable con-cluir que Álamo Figueroa acudió a la oficina del licenciado Nieves Figueroa en la cúspide del esquema que se alega fue propiciado por la secretaria de éste y que las repercu-siones sufridas por Álamo Figueroa fueron causa directa de ello. Las actuaciones de la secretaria del licenciado Nieves Rodríguez ciertamente crearon una situación anómala que rebasó la expectativa de diligencia en la práctica de éste, no sólo para con Álamo Figueroa, sino también para con los demás clientes que resultaron afectados.
Por las razones anteriormente expuestas, consideramos que el licenciado Nieves Rodríguez no violó la ética profesional. De hecho, cabe recalcar que no bien supo de los actos de su secretaria, actuó diligentemente e hizo todo en *138 su poder para remediar los daños sufridos por sus clientes, incluyendo a la querellante en el presente caso. Consecuen-temente, acogemos la recomendación del Comisionado Especial y archivamos la querella instada contra el licenciado Nieves Rodríguez.

Se dictará sentencia de conformidad.

 El licenciado Nieves Rodríguez fue admitido al ejercicio de la abogacía el 15 de enero de 1987 y al ejercicio de la notaría el 10 de junio de 1987.

 Del expediente surge, como única identificación, que los abogados a quienes el licenciado Nieves Rodríguez acostumbra referirle los casos sobre daños y perjui-cios son los licenciados Ruiz y Reyes.

 Dicho canon también dispone:
“Ningún abogado está obligado a representar a determinado cliente y es su derecho el aceptar o rechazar una representación profesional. Es altamente impropio aconsejar transacciones o actos en contra de la ley, entablar pleitos viciosos, instigar falsas defensas sin que pueda el abogado justificar dichos actos con el pretexto de que al actuar así, lo hizo siguiendo las instrucciones de su cliente. El abogado debe obe-decer siempre su propia conciencia y no la de su cliente.” 4 L.P.R.A. Ap. IX, C. 26.

 Del expediente surge que Álamo Figueroa admitió haberse ausentado de la jurisdicción para atender a una hija enferma en Estados Unidos, detalle que el li-cenciado Nieves Rodríguez desconocía en aquel momento.