CP-97-9                                          - 1 -

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Eduardo Ayala Torres | Querella<br><br>2000 TSPR 44 |

Número del Caso: CP-1997-0009

Fecha: 14/02/2000

Abogados de la Parte Querellada: Lcdo. Jorge Laborde Corretjer

Oficina del Procurador General:  Hon. Gustavo A. Gelpí
                                 Procurador General

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    Eduardo Ayala Torres
                                    CP-97-9

PER CURIAM

San Juan, Puerto Rico, a 14 de febrero de 2000.

## I.

La Oficina del Procurador General presentó ante este Foro un informe sobre la conducta profesional del Lcdo. Eduardo Ayala Torres, en su desempeño como representante legal del Sr. José F. Villamán Matos. Luego de varios trámites procesales le ordenamos formular la correspondiente querella, la cual fue instada el 19 de septiembre de 1997. En su querella el Procurador General imputa al licenciado Ayala

Torres violaciones a las disposiciones de los Cánones 12, 18, 19, y 23

de Etica Profesional.[1]

_____

[1] **Canon 12. Puntualidad y tramitación de las causas:**

Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente.

**Canon 18. Competencia del abogado y consejo al cliente**

Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan. No debe tampoco ceder en el cumplimiento de su deber por temor a perder el favor judicial ni la estimación popular. No obstante, un abogado puede asumir cualquier representación profesional si se prepara adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia.

**Canon 19. Información al cliente**

El abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado.

Siempre que la controversia sea susceptible de un arreglo o transacción razonable debe aconsejar al cliente el evitar o terminar el litigio, y es deber del abogado notificar a su cliente de cualquier oferta de transacción hecha por la otra parte.

El abogado que representa varios clientes con intereses comunes o relacionados entre sí no debe transigir ninguno de los casos envueltos sin que cada cliente esté enterado de dicha transacción y sus posibles consecuencias.

**Canon 23.   Adquisición de intereses en litigio y manejo de los bienes del cliente**

El abogado no debe adquirir interés o participación alguna en el asunto en litigio que le haya sido encomendado.

Un abogado no debe adelantar o prometer ayuda financiera a su cliente para gastos médicos o subsistencia, excepto que puede adelantar el pago de las costas del litigio, y los gastos de investigación y de exámenes médicos necesarios para representar debidamente el caso de su cliente.

La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que

Examinada la querella instada por el Procurador General y la contestación sometida por el licenciado Ayala Torres, designamos al Hon. Agustín Mangual Hernández como Comisionado Especial para que celebrase vista y sometiera el correspondiente informe. Tras la celebración de vista evidenciaria el 31 de marzo de 1998, en la que se recibió el testimonio del Sr. José F. Villamán Matos y del licenciado Ayala Torres, el Comisionado Especial sometió su Informe. El Procurador General solicitó unas determinaciones de hechos adicionales. El Comisionado Especial ordenó la transcripción de los testimonios vertidos en la vista, y el 13 de enero de 1999 sometió un Informe Suplementario en el cual incorporó las determinaciones de hechos adicionales solicitadas por el Procurador General.

El 1 de febrero de 1999 el licenciado Ayala Torres presentó un escrito en oposición a las determinaciones de hechos adicionales incorporadas en el Informe Suplementario sometido por el Comisionado Especial, y cuestionando el que el Comisionado Especial ordenara *motu propio* la transcripción de los testimonios vertidos en la vista. Además señaló que se violó su debido proceso de ley porque no se le notificó la resolución del Comisionado Especial ordenando la transcripción de la vista  y no se le hizo llegar copia de la transcripción.

En vista de este señalamiento el Tribunal instruyó a Secretaría que enviara copia de la transcripción al licenciado Ayala Torres y se le concedió un término de tiempo razonable para comparecer.

Oportunamente el lienciado Ayala Torres compareció y nos expresó que la transcripción estaba "conforme con lo sucedido en la vista". Además, nuevamente objetó las determinaciones de hechos adicionales del Comisionado Especial.

Con el beneficio de los Informes sometidos por el Comisionado Especial, así como de todos los escritos sometidos por el licenciado Ayala Torres y el Procurador General, resolvemos.

---

vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen.

**II.**

De los informes del Comisionado Especial se desprende que el licenciado Ayala Torres fue contratado por el Sr. José F. Villamán Matos para que lo representara en un caso de división de bienes de gananciales[2], y en un caso de alimentos.[3] De las determinaciones de hecho realizadas por el Comisionado Especial, avaladas por la prueba presentada, se puede concluir que la representación legal ofrecida por el licenciado Ayala Torres a su cliente, el Sr. José Francisco Villamán fue, en ambos casos, deficiente y descuidada.

Entre las determinaciones del Comisionado Especial se encuentra el que el licenciado Ayala Torres presentó un documento ante el tribunal sin el número del caso y con el epígrafe incorrecto; sometió emplazamientos que aparecen entregados en dos fechas distintas; confundió y cruzó varias mociones y violó las Reglas de Procedimiento Civil; incompareció a vistas señaladas sin excusa previa; notificó a su cliente la fecha errónea respecto a una vista en que se requería su comparecencia; y se dilató en cumplir con las órdenes del tribunal e incumplimiento con las sanciones impuestas por el tribunal.

La dejadez y descuido del licenciado Ayala Torres llevó al tribunal sentenciador a dictar una sentencia en rebeldía en el caso de alimentos, imponiendo al Sr. José F. Villamán Matos una pensión de $100.00 semanales a favor de su ex-esposa. El licenciado Ayala Torres no notificó a su cliente dicha sentencia lo que conllevó que se acumulara una deuda de $8,800.00, ya que el Sr. Villamán Matos no se entero de la misma hasta que recibió una libreta de pagos de ASUME.

El licenciado Ayala Torres tampoco notificó a su cliente que tenía que comparecer a ciertas vistas lo que conllevó que se le impusieran sanciones por honorarios de abogado y a favor del Estado Libre Asociado por las demoras causadas en el trámite del caso. El Sr. Villamán Matos no satisfizo dichas sanciones por no estar enterado de las mismas.

---

[2] José Francisco Villamán v. Josefa Santiago, KAC 94-0684.
[3] Josefa Santiago Muñoz v. José F. Villamán Matos, KAC 95-0210.

Respecto al caso de división de bienes gananciales, el Comisionado Especial determinó que el licenciado Ayala Torres solicitó un desistimiento sin perjuicio sin consultar ni obtener el consentimiento del Sr. Villamán Matos.

Reiteradamente hemos sostenido que los abogados deben demostrar puntualidad y diligencia en la tramitación de las causas, y que esta obligación se extiende a todo el trámite judicial desde la radicación de la demanda, su rápida contestación, el uso de los mecanismos de descubrimiento de prueba y el cumplimiento de las órdenes del Tribunal. Heftler Const. Co. v. Tribunal Superior, 103 D.P.R. 844 (1975). En la tramitación de un pleito, el abogado debe a las cortes el respeto a las órdenes judiciales que le son dirigidas, exigiéndose de él la asistencia puntual y el despliegue de todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en la tramitación y solución de los casos. Acevedo v. Compañía Telefónica de P.R., 102 D.P.R. 787 (1974).

También hemos determinado que un abogado tiene la obligación de mantener a su cliente informado de todo asunto importante que surja en el desarrollo del caso. De no hacerlo incurre en conducta irresponsable que viola la ética profesional. In re Rosario, 116 D.P.R. 462 (1985); In re Acosta Grubb, 119 D.P.R. 595 (1987); In re Cardona Vázquez, 108 D.P.R. 6 (1978). Una sentencia, ya sea de archivo o en sus méritos, que pone fin parcial o totalmente a la causa de acción es uno de los asuntos a ser informados por el abogado inmediatamente al cliente. Colón Prieto v. Géigel, 115 D.P.R. 232 (1984).

Un examen cuidadoso del expediente de este caso, incluyendo la transcripción de los procedimientos y las objeciones del licenciado Ayala Torres, revela que las determinaciones de hecho realizadas por el Comisionado Especial se sostienen de la prueba que tuvo ante sí. En aquellas situaciones de testimonio conflictivo el Comisionado adjudicó, como le correspondía, la cuestión de credibilidad. *In re Morales Soto*, 134 D.P.R. 1012 (1994).

Nada hay ante nos que demuestre que hubo prejuicio, parcialidad o error manifiesto en las determinaciones de hecho a que llegó el Comisionado Especial. En su comparecencia ante nos el licenciado Ayala Torres se limita a objetar que el Comisionado accediera a la solicitud del Procurador General de formular unas determinaciones de hechos adicionales. El abogado acepta que hubo prueba para sostener dichas determinaciones pero sostiene que la misma es conflictiva. Su comparecencia olvida que la función del Comisionado Especial es esencialmente dilucidar la prueba presentada y hacer unas determinaciones de hechos. No habiendo el licenciado Ayala Torres demostrado que hubo prejuicio, parcialidad o error manifiesto en la apreciación de la prueba no existe razón alguna para intervenir, y menos aun para alterar las expresas determinaciones del Comisionado Especial, las cuales se encuentran avaladas por las declaraciones de los testigos.

La conducta del licenciado Ayala Torres en su tramitación de los casos de su cliente, el Sr. Villamán Matos demuestra indiferencia, despreocupación, inacción y displicencia de su parte. No hay duda que dicha conducta irresponsable resultó perjudicial para su cliente.

La incomparecencia a los señalamientos de vista y su incumplimiento con las órdenes emitidas; la falta de diligencia, y el desorden y confusión en la tramitación de los casos; la falta de no mantener informado a su cliente sobre los señalamientos de vista y sobre la sentencia dictada en el caso de alimentos; y el desistir de la causa de acción en el caso de división de bienes gananciales sin el consentimiento de su cliente, demuestra un patrón de conducta irresponsable y evidencia falta de diligencia y cuidado en su desempeño profesional, además de constituir una violación de los Cánones 12, 18 y 19 de Etica Profesional.

Por las razones anteriormente esbozadas se decreta la suspensión inmediata del ejercicio de la abogacía del Lcdo. Eduardo Ayala Torres

por un término de seis (6) meses, a partir de la notificación de esta Opinión.

Se dictará la Sentencia correspondiente.

por un término de seis (6) meses, a partir de la notificación de esta Opinión.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

   Eduardo Ayala Torres

CP-97-9

SENTENCIA

San Juan, Puerto Rico, a 14 de febrero de 2000.


     Por los fundamentos expuestos en la Opinión que
antecede, la cual se hace formar parte integral de la
presente, se decreta la suspensión inmediata del
ejercicio de la abogacía del Lcdo. Eduardo Ayala Torres
por un término de seis (6) meses, a partir de la
notificación de esta Opinión.

     Lo acordó el Tribunal y certifica la Secretaria del
Tribunal Supremo. El Juez Asociado señor Fuster
Berlingeri emitió Opinión Disidente.


                    Isabel Llompart Zeno
                 Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Eduardo Ayala Torres                          CP-1997-9

Opinión disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 14 de febrero de 2000.

Me veo obligado a disentir del dictamen de la mayoría en el caso de autos, no por los méritos de éste, sino porque la mayoría no presenta ni dilucida de manera satisfactoria en su opinión Per Curiam un problema procesal que considero medular y que atañe a las normas que deben regir en la jurisdicción disciplinaria.  Veamos.

I

En el caso de autos, el Procurador General solicitó al Comisionado Especial que enmendase el informe que éste había preparado para nuestra consideración, a los fines de añadirle dos nuevas determinaciones de hechos.  **Las determinaciones                                                      de**

**hechos adicionales solicitadas por el Procurador General eran esenciales para poder establecer cabalmente la conducta impropia que el Procurador General le había imputado al abogado en su querella**. Sin ellas no se podía demostrar la comisión de la violación de los cánones de ética alegados en la querella.

El Comisionado Especial entonces ordenó la transcripción de los testimonios presentados en la vista evidenciaria y más tarde, en un informe suplementario de una página, hizo las dos determinaciones de hechos solicitadas por el Procurador General.

Aquí surge el problema procesal que me preocupa. El representante legal del querellado aduce que no pudo enfrentarse **oportunamente** a las dos determinaciones de hechos en cuestión **porque la transcripción referida no le fue notificada originalmente**. Señaló, con razón, que su representado, el querellado, tenía derecho a obtener copia de la transcripción referida, **antes de que el Comisionado enmendase su informe**, para verificar que dicha transcripción fuese correcta, debido a que la grabación que se usó para prepararla podía tener partes inaudibles o ininteligibles, y por esa causa, o por otras, la transcripción podía ser inexacta.

La alegación del querellado, de que no recibió copia de la transcripción **a tiempo para cuestionar ante el Comisionado sus dos nuevas y esenciales determinaciones de hechos adicionales**, fue formulada ante nos en al menos **dos escritos distintos**. El primero de ellos fue el que el querellado sometió para oponerse al informe suplementario del Comisionado Especial que contenía las dos medulares determinaciones de hechos en cuestión. El segundo, presentado meses más tarde, fue el que el querellado sometió en cumplimiento con una primera orden nuestra concediéndole un término para impugnar ante nos las determinaciones del Comisionado. En ambos insiste el querellado que no recibió la transcripción en cuestión **a tiempo para enfrentarse ante el Comisionado** a las cruciales determinaciones de hechos adicionales solicitadas por el Procurador General.

En abono del planteamiento del querellado tenemos la réplica del Procurador General al primero de los escritos del querellado mencionado en el párrafo anterior. **El Procurador General admite tácitamente que el querellado no recibió copia de la transcripción antes de que el Comisionado enmendase su informe**. Lo hace al no negar la alegación del querellado, y limitarse en la réplica referida solamente a señalar de manera simplista que el querellado pudo haber examinado dicha transcripción en nuestra Secretaría. ¿**Cómo podía hacer tal examen si no sabía que la transcripción había sido realizada**?

Mas aun, al amparo de la Regla 14(o) del Reglamento del Tribunal Supremo, el querellado tenía un claro derecho a recibir copia de la transcripción referida tan pronto fue realizada. Dicho derecho no fue observado aquí.

A pesar de que el querellado ha insistido ante nos varias veces respecto a esta cuestión procesal, la mayoría de este Tribunal opta por desatender dicho planteamiento. En mi criterio, tal postura de la mayoría del Tribunal sobre este asunto no es satisfactoria. En casos como el de autos, la labor de determinar los hechos corresponde de ordinario al Comisionado Especial que nombramos precisamente para ello, y esa labor no puede realizarse sin escuchar al querellado debidamente. El querellado tiene ante éste la oportunidad de enfrentarse plenamente a los cargos en su contra, **para así propiciar una meticulosa y ponderada depuración de los hechos**, que nos permita entonces determinar si se ha infringido algún canon de ética profesional.

En el caso de autos, el querellado no tuvo la debida oportunidad de confrontar **ante el Comisionado** la solicitud del Procurador General de que se determinasen dos hechos adicionales que eran esenciales para sostener los cargos imputados en la querella. No la tuvo porque no contó con la transcripción usada por el Comisionado para determinar dichos hechos adicionales. Existe una sombra, pues, sobre la requerida depuración meticulosa y ponderada de los hechos por el Comisionado, que en mi criterio nos impide pasar juicio propiamente sobre la querella

referida.  Además, la opinión de la mayoría, al no examinar a fondo esta cuestión, tiende a convalidar que en el futuro la impugnación de determinaciones de hechos esenciales de un Comisionado Especial en casos de nuestra jurisdicción disciplinaria no tenga que hacerse inicialmente ante el propio Comisionado, lo que para mí es inaceptable. El Comisionado debe ser de ordinario el juzgador de todos los hechos medulares, y para ello debe escuchar al querellado **antes de decidir**.

El proceso disciplinario debe estar afincado siempre en una pulcritud procesal que no de lugar a dudas sobre las sanciones impuestas.  Ello no ocurre cuando suceden irregularidades como las del caso de autos, que la mayoría trata livianamente.

Por todo lo anterior, disiento.


Jaime B. Fuster Berlingeri
Juez Asociado