per curiam:
Como consecuencia de la sentencia emitida por este Tribunal en Souffront v. A.A.A., 164 D.P.R. 663 (2005), el Procurador General presentó la querella que nos ocupa. En ésta, le imputó al Ledo. Segismundo López Mon-talvo dos cargos por violación a los Cánones 9 y 12 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Los hechos alegadamente violatorios de las normas éticas, cuya comi-sión se le imputa al licenciado López Montalvo, surgen de su conducta como abogado de la parte demandante en la etapa apelativa del caso antes mencionado, según explica-mos a continuación.
I
La demanda en daños y perjuicios que dio comienzo al caso Souffront v. A.A.A., supra, se presentó en el Tribunal de Primera Instancia, Sala Superior de Mayagüez. El li-cenciado López Montalvo, como hemos dicho, representaba a la parte demandante. El 31 de octubre de 2003, el foro de instancia declaró “con lugar” una moción de sentencia su-maria presentada por la codemandada, ACE Insurance Co. (ACE) y desestimó el pleito por insuficiencia de prueba. La sentencia fue archivada en autos y notificada a la partes el 8 de diciembre de 2003.
El 8 de enero de 2004 (treinta y un días después de archivada en autos y notificada la sentencia), los deman- *196 dantes presentaron ante el Tribunal de Apelaciones su re-curso de apelación. Para acreditar la jurisdicción de dicho foro, indicaron que la sentencia les fue notificada el 9 de diciembre de 2003 e incluyeron en su apéndice la copia de un sobre con un sello de $0.49 y matasellos del 9 de diciem-bre de 2003. Según alegaron, éste fue el sobre utilizado por el foro de instancia para notificarles la sentencia.
Por su parte, la apelada, ACE, solicitó la desestimación del recurso, alegando la falta de jurisdicción del tribunal apelativo y señalando que el sobre presentado por los de-mandantes no correspondía al sobre en que se envió la sentencia. A su vez, presentó copias de los sobres en que ACE y la otra codemandada, Autoridad de Acueductos y Alcantarillados (AAA), recibieron sus copias de la sentencia. La fecha de envío por correo de ambos sobres era el 8 de diciembre de 2003. Además, ambos sobres te-nían dos sellos cada uno, uno de $0.49 y otro de $0.57, para un total de franqueo de $1.06. Los sellos adheridos a cada uno de los sobres enviados a los codemandados seguían una secuencia numérica, lo cual indicaba que se habían enviado de forma simultánea. ACE también sometió copia de la página de “teletribunales” que reflejaba que la sen-tencia apelada se había notificado el 8 de diciembre de 2003.
El 25 de marzo de 2004, el Tribunal de Apelaciones re-vocó la sentencia del Tribunal de Primera Instancia, pero no resolvió nada en cuanto al planteamiento jurisdicciorial. Habiéndose presentado una moción de reconsideración, el Tribunal de Apelaciones concedió a los apelantes un tér-mino para expresarse. Estos comparecieron, representados por el licenciado López Montalvo, para reiterar que la sen-tencia del Tribunal de Primera Instancia no se les notificó el 8 de diciembre de 2003, como a las otras partes en el pleito, sino el 9 de ese mismo mes.
El Tribunal de Apelaciones denegó la reconsideración y ACE acudió ante nosotros mediante un recurso de *197 certiorari. Incluyó en el apéndice de su escrito una certifi-cación oficial de la Secretaría Regional del Tribunal de Pri-mera Instancia, Sala Superior de Mayagüez. Esta certifi-caba que la sentencia dictada “fue notificada y depositada en el correo el 8 de diciembre de 2003”, y que el registro de “Notificación de sentencias y resoluciones enviadas al co-rreo fuera de fecha” no reflejaba anotación alguna que in-dicara que se hubiera hecho alguna notificación en fecha distinta a la de archivo en autos.
Ordenamos a la parte recurrida mostrar causa por la cual no debía expedirse el recurso y revocarse la determi-nación del Tribunal de Apelaciones. Los recurridos, nueva-mente representados por el licenciado López Montalvo, comparecieron y argumentaron que no debíamos tomar en consideración la certificación emitida por la Secretaría Regional de Mayagüez porque ese documento no se había pre-sentado ante el Tribunal de Apelaciones y no estaba in-cluido en el expediente del caso. Señalaron, además, que la “alegada certificación” no excluía la posibilidad de error humano y solicitaron que se tomara conocimiento judicial “de las correspondencias mal manejadas, colocadas en lu-gares equivocados y extraviadas que ocurren diariamente en el correo postal”.
El 21 de abril de 2005, mediante opinión per curiam, expedimos el recurso de certiorari y revocamos la sentencia del Tribunal de Apelaciones. Expusimos en nuestra opinión que la actitud del licenciado López Montalvo, al tratar de evitar que este Tribunal considerara la certificación de la Secretaría Regional del Tribunal de Primera Instancia de Mayagüez, “pone de manifiesto un trámite amañado para confeccionar artificialmente la jurisdicción del foro apelati-vo” (Sentencia de 21 de abril de 2005, pág. 16) y era “alta-mente preocupante”. Por eso, ordenamos referir la con-ducta desplegada por el licenciado López Montalvo al Procurador General.
El Procurador General presentó la querella el. 22 de agosto de 2005. El licenciado López Montalvo respondió el *198 1 de diciembre de 2005 y adujo que “los hechos que surgen de la opinión de este Honorable Tribunal a lo más que dan lugar es a concluir que el aquí compareciente incurrió en un error lamentable al utilizar de manera equivocada un sobre para acreditar la jurisdicción del foro apelativo”. El 8 de enero de 2005 nombramos al Ledo. Víctor Rivera Gon-zález como Comisionado Especial. Celebrada la vista y re-cibida la prueba, el Comisionado rindió su Informe el 28 de agosto de 2007.
Durante el trámite de la querella, el querellado no con-trovirtió los hechos que hemos reseñado. Más bien, en to-dos sus escritos y en la vista evidenciaría se limitó a cues-tionar que sus actos tuvieran la intención de inducir a error al Tribunal de Apelaciones respecto a su jurisdicción. Según el querellado, el Procurador General no llevó a cabo investigación de hechos alguna antes de presentar la que-rella, sino que se limitó a citar nuestras expresiones en Souffront v. A.A.A., supra. Arguye el querellado que ello no es suficiente para concluir que el sobre presentado, efecti-vamente, se sometió con ese propósito o que fuera objeto de alteración o de uso indebido.
El Procurador General no presentó prueba testifical du-rante la vista y su prueba documental consistió básica-mente de los expedientes del caso Souffront v. A.A.A., supra, ante los foros de instancia, apelativo y el Tribunal Supremo.
Además de su propio testimonio, el querellado ofreció el testimonio de tres abogados que se expresaron sobre su conducta y desempeño personal y profesional. El quere-llado testificó que para la fecha de los hechos laboraban en su bufete tres abogados y tres secretarias, dos de éstas a tiempo parcial. Las notificaciones las recibían las secreta-rias, quienes tenían una directriz de engrapar el sobre de la notificación al expediente. Expuso que no manejó perso-nalmente el sobre ni la sentencia enviados por el Tribunal de Primera Instancia. Indicó, además, que en su oficina no *199 había, para la fecha de los hechos, un registro de notifica-ciones recibidas, aunque se implantó uno después de lo ocurrido. Aceptó el querellado que nunca se fijó en el fran-queo requerido para el envío de una sentencia de catorce páginas.
Según el Comisionado Especial, el querellado aceptó su negligencia, “no así que su actuación haya ido intencional-mente dirigida a tratar de crear jurisdicción artificial-mente, constándole que no la había”. Informe del Comisio-nado Especial. En su Informe el Comisionado determina, como cuestión de hecho, que el licenciado López Montalvo “fue negligente en la supervisión del manejo de la corres-pondencia” y que se probó la infracción a los Cánones 9 y 12 del Código de Etica Profesional, supra, “en función de la negligencia del abogado tal como aceptada por éste en su testimonio y evidenciada por la contundente prueba documental”. Id. El Comisionado nos recomienda que limi-temos la sanción disciplinaria correspondiente a una amo-nestación o censura, ya que el licenciado López Montalvo goza de buena reputación en la profesión legal y ésta es la primera querella que se presenta en su contra.
II
[1 — 2] Al querellado se le imputa haber violado los Cá-nones 9 y 12 del Código de Ética Profesional, supra, que en lo aquí pertinente proveen lo siguiente:
Canon 9:
El abogado debe observar para con los tribunales una con-ducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o aten-tados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe interve-nir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales. 4 L.P.R.A. Ap. IX.
*200 Canon 12:
Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protec-ción de los derechos sustanciales de su cliente. 4 L.P.R.A. Ap. IX.
Los abogados son una parte esencial del proceso de impartir justicia y, como tal, tienen la ineludible encomienda de desempeñar su labor con la mayor diligencia, responsabilidad e integridad. In re Rosado Nieves, 159 D.P.R. 746 (2003); In re Ortiz Velázquez, 145 D.P.R. 308 (1998); In re Córdova González, 135 D.P.R. 260 (1994). En reiteradas ocasiones hemos hecho hincapié en que el Canon 12 del Código de Etica Profesional, supra, impone a los abogados y a las abogadas la obligación de ser diligentes y responsables en la tramitación de los casos que se les encomiendan, evitando entorpecer su resolución.
El abogado está llamado a cumplir la obligación que el referido Canon 12 impone en todas las etapas de un litigio. In re Collazo I, 159 D.P.R. 141 (2003); In re Soto Colón, 155 D.P.R. 623 (2001); In re Ayala Torres, 150 D.P.R. 288 (2000); In re Pagán Hernández, 141 D.P.R. 113 (1996); In re Arroyo Villamil, 113 D.P.R. 568 (1982); Heftler Const. Co. v. Tribunal Superior, 103 D.P.R. 844, 846 (1975).
En cuanto al Canon 9, supra, hemos expresado que la práctica de la abogacía exige hacia los tribunales constante respeto. In re Pagán, 116 D.P.R. 107, 111 (1985). Esta actitud de respeto no se limita al comportamiento y lenguaje utilizados durante los procesos o en los escritos judiciales. Es más bien la responsabilidad que tiene todo abogado o toda abogada de asumir un compromiso de vigilar constantemente por la calidad de la justicia que se imparte en los tribunales y de actuar para asegurar el buen *201 orden en la administración de la justicia. Esta obligación, según hemos explicado en incontables ocasiones, tras-ciende la relación puramente privada entre el abogado y el cliente. Lluch v. España Service Sta., 117 D.P.R. 729 (1986).
El querellado acepta que los hechos incontrovertidos ex-puestos en nuestra opinión en Suffront v. A.A.A., supra, son suficientes para sostener que él fue negligente al utili-zar un sobre equivocado para acreditar la jurisdicción del foro apelativo. Aduce, sin embargo, que no se ha probado que su actuación fuera intencional y que para sostener el ejercicio de nuestra facultad disciplinaria es necesario de-mostrar que la conducta no sólo fue meramente negligente, sino que hubo intención de actuar contrario a lo que re-quieren los cánones de ética profesional. No tiene razón.
En Martínez, Inc. v. Abijoe Realty Corp., 151 D.P.R. 1 (2000), establecimos que cuando la fecha del archivo en autos del dictamen judicial y la de la notificación postal no coinciden, la mejor práctica para acreditar la jurisdicción del foro apelativo es que el apelante o peticionario incluya en el apéndice al recurso, además de la copia del volante del archivo en autos de la notificación de la sentencia, una copia del sobre del Tribunal en el que se recibió la notificación] El matasellos del correo deberá reflejar claramente la discrepancia en las fechas. De esta forma, el tribunal y las partes pueden constatar si el recurso de apelación se presentó dentro del tiempo que disponen las Reglas de Procedimiento Civil. Ante el peligro potencial del uso de otro sobre originado en el mismo tribunal en un caso distinto, ordenamos a las secretarías de los diversos tribunales que crearan un registro, o levantaran un acta, que permitiera constatar si una sentencia, resolución u orden se notifica por correo en una fecha distinta a su archivo en autos. Id., pág. 12. Advertimos a los abogados que el uso de sobres que no correspondieran al caso apelado para inducir a error al foro apelativo respecto *202 a su jurisdicción, estaría sujeto a sanciones económicas y disciplinarias. Id., pág. 13 esc. 5.
El licenciado López Montalvo estaba advertido, pues, de la seriedad e importancia de poder demostrar fehaciente-mente que hubo una discrepancia entre la fecha de archivo en autos de una sentencia y su notificación. Sabía de la directriz que habíamos impartido a las secretarías regiona-les sobre el registro de notificaciones en fechas distintas al archivo en autos. No obstante, se opuso a que tomásemos en consideración dicha certificación en este caso. Antes de eso pudo examinar la información al respecto que obraba en el sistema de Teletribunales, ofrecida por ACE en su moción de reconsideración. En fin, no actuó en un vacío.
La negligencia del Ledo. Segismundo López Montalvo en el manejo de documentos que inciden en la jurisdicción del foro apelativo, admitida por él, y su obstinada insisten-cia en que no se considerase siquiera una certificación ofi-cial de la Secretaría del Tribunal de Primera Instancia que indudablemente aclaraba ese asunto, son contrarias a la obligación de vigilancia para asegurar el buen orden de la administración de la justicia que requiere el Canon 9 y la diligencia y responsabilidad que requiere el Canon 12. No se trata de una mera inadvertencia o leve dejadez. Al licen-ciado López Montalvo se le advirtió de la incongruencia en franqueo entre el sobre que según él se utilizó para notifi-carle la sentencia y los sobres que recibieron los codeman-dados. En la etapa de la reconsideración ante el foro ape-lativo se le brindó información oficial que ponía en entre-dicho su alegación. En todo momento se negó a admitir las incongruencias y argumentó sin fundamento contra nues-tra facultad para considerarlas, aun cuando ello iba diri-gido a aclarar y asegurar la jurisdicción del foro apelativo, asunto que es, como hemos explicado en numerosas ocasio-nes, altamente privilegiado y que se puede levantar en cualquier etapa del proceso. Por ello, su conducta consti-tuyó una violación a esos cánones.
*203 Lo anterior evidencia una conducta altamente negli-gente, y una preocupante falta de diligencia en cuanto a su obligación de velar por la pureza y el buen orden de los procedimientos judiciales. No obstante, tomando en consi-deración que el Comisionado Especial determinó que el querellado goza de una buena reputación profesional, que no ha estado sujeto a otro proceso disciplinario y que ha reconocido el error cometido, limitamos la sanción discipli-naria a una suspensión del ejercicio de la profesión por el término de un mes.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez se inhibió. Los Jueces que intervienen lo hacen por Regla de Necesidad.