*In re* JOSÉ J. VELÁZQUEZ QUILES, querellado.

*Número:* CP-95-2          *Resuelto:* 30 de junio de 1998

*Carlos Lugo Fiol, Procurador General*, y *Edna Evelyn Rodríguez Benítez, Procuradora General Auxiliar*, querellantes; *Pablo Colón Santiago*, abogado del querellado.

PER CURIAM: Examinada la contestación a la querella presentada ante nos por el licenciado Velázquez Quiles, y habiendo llegado a la conclusión de que su conducta de dar información falsa a su cliente constituyó una violación al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, procede su separación del ejercicio de la profesión. Sin embargo, tomando en consideración el hecho de que lleva suspendido de la práctica de la abogacía desde el 8 de diciembre de 1993, se toma en consideración el tiempo de suspensión ya transcurrido y se ordena su readmisión al ejercicio de la abogacía que habrá de ser efectiva el 1ro de agosto de 1998.

El 8 de julio de 1993 el Sr. Víctor Matos Martínez presentó una queja contra el Lcdo. José Japhet Velázquez Quiles ante la Oficina del Procurador General. De la querella sometida por el Procurador General y según lo aceptado por el querellado, se desprende que el 28 de octubre de 1992 el licenciado Velázquez Quiles recibió de manos del señor Matos Martínez y de su cliente, la Sra. Carmen Matos Martínez, un cheque por la cantidad de veinte mil dólares ($20,000) a nombre del Tribunal Superior, Sala de Mayagüez, para que fuese consignado en dicho tribunal en un procedimiento de liquidación y partición de herencia. Dicha cantidad era para satisfacer el pago de un legado que el padre de los señores Matos Martínez había dejado a sus nietos menores de edad, los hijos de Don Víctor y Doña Carmen. Sin embargo, para marzo de 1993 el referido che-

que aún continuaba sin consignar, ya que para ello se requerían los certificados de nacimiento de los menores beneficiados, documentos que no había conseguido el licenciado Velázquez Quiles. En lugar de poner a su cliente —la Sra. Carmen Matos Martínez— en conocimiento de tal hecho, le informó falsamente que la consignación ya se había realizado. Descansando en tal información, el querellante, Sr. Víctor Matos Martínez, gestionó con el tribunal de instancia la verificación de la consignación, siendo informado de que no se había realizado. Al ser confrontado con tal información, el licenciado Velázquez Quiles informó que el cheque le había sido devuelto por el tribunal, cuando la realidad era que nunca llevó a cabo la consignación encomendada.

El 15 de julio de 1993 la Secretaría de este Foro le notificó al licenciado Velázquez Quiles de la queja presentada en su contra. Se le concedió diez (10) días para que compareciese con sus comentarios y se le apercibió que de no comparecer se elevaría la queja ante el Tribunal en pleno sin contar con el beneficio de su comparecencia. El 10 de septiembre de 1993 emitimos una resolución, en la cual le ordenamos al licenciado Velázquez Quiles que dentro del término de veinte (20) días compareciese con sus comentarios con respecto a la queja presentada y le apercibimos de que el incumplimiento de dicha orden podría acarrear una sanción disciplinaria sin más citarle u oírle. Ante la no comparecencia del licenciado Velázquez Quiles, lo suspendimos indefinidamente del ejercicio de la abogacía y se ordenó la incautación de su obra notarial hasta tanto acreditase su disposición a cumplir rigurosamente con nuestras órdenes. *In re Velázquez Quiles*, 134 D.P.R. 821 (1993).

Mientras todo esto sucedía, el 13 de septiembre de 1993 el Tribunal Superior, Sala de Humacao, nos remitió, con el propósito que determinásemos si ejercitábamos nuestra jurisdicción disciplinaria, copia de tres (3) órdenes dictadas

por dicha sala a las cuales el licenciado Velázquez Quiles no había respondido.

Una vez suspendido Velázquez Quiles, el 15 de diciembre de 1993 el Colegio de Abogados de Puerto Rico, por conducto de la Comisión de Ética Profesional, compareció ante nos para informarnos que había recibido cinco (5) querellas contra Velázquez Quiles presentadas por los Sres. Ángel Matos Santos, Juan R. Ramos Rivera, Verana Rodríguez Morales, Hilda Claudio Rivera e Hilda López López.[1] Nos informó que la comisión carecía de jurisdicción para continuar con trámite disciplinario alguno mientras el referido abogado estuviese separado del ejercicio de la profesión, por lo cual nos remitían toda la documentación que obraba en su poder.

El 8 de febrero de 1994 el señor Velázquez Quiles, por conducto de su representación profesional, compareció ante nos para exponer su posición respecto a la queja incoada por el señor Matos Martínez. En ella reconoció su falta de diligencia en la atención de la queja incoada en su contra y adujo que esto se debió a una condición emocional que estaba afectando su salud y de la cual estaba en recuperación. Aceptó que dicha condición emocional lo llevó a un comportamiento que provocó varias quejas en su contra pendientes de adjudicación. Solicitó, además, que se dejara sin efecto la suspensión indefinida decretada y se le reinstalase en el ejercicio de la profesión mientras se resolvían y adjudicaban las quejas interpuestas. El 18 de febrero de 1994 emitimos una resolución para indicar que no se daría curso a ninguna solicitud de readmisión hasta tanto Velázquez Quiles contestase a los requerimientos del Procurador General respecto a otra queja instada contra él

---

[1] La Sra. Hilda López López presentó también una queja contra el licenciado Velázquez Quiles en el Tribunal Supremo. El 15 de octubre de 1993 la Secretaría de este Foro le ordenó que compareciese dentro de diez (10) días con su contestación y se le apercibió que de no comparecer se elevaría la queja al Tribunal en pleno sin el beneficio de su comparecencia.

por el Sr. José Cruz Torres en marzo de 1993. El 1ro de marzo de 1994 Velázquez Quiles presentó, por conducto de su representación legal, una Moción Reiterando Solicitud de Readmisión e informar que había contestado los requerimientos hechos por el Procurador General con respecto a la queja presentada por el Sr. José Cruz Torres.(²)

El 4 de marzo de 1994 emitimos una resolución en la cual ordenamos al Procurador General que, tomando en cuenta la comparecencia de Velázquez Quiles, sometiese el informe correspondiente.

El 3 de mayo de 1994 Velázquez Quiles presentó una segunda Moción Reiterando Solicitud de Readmisión. Mediante la Resolución de 27 de mayo de 1994, pospusimos la consideración de dicha moción en virtud de una prórroga concedida al Procurador General para someter el informe correspondiente.

El 16 de junio de 1994 el Procurador General presentó su informe con respecto a la queja presentada por el señor Matos Martínez. Tras una exhaustiva investigación, concluyó que en el caso de autos no se formalizó una relación de abogado-cliente entre el señor Matos Martínez y Velázquez Quiles. No obstante, determinó que se configuró una conducta impropia entre el querellado y su cliente, la Sra. Carmen Matos Martínez.

Concluyó que Velázquez Quiles incurrió en una violación al Canon 35 del Código de Ética Profesional, *supra*, que dispone, en lo pertinente, que:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

Dicha violación se configuró cuando el querellado le informó a su cliente que había consignado el cheque de veinte mil dólares ($20,000) en el tribunal, siendo falsa esta información, y cuando posteriormente le informó que

---

(²) Dicha queja fue resuelta a nivel administrativo.

el cheque le había sido devuelto por el tribunal, información que también era falsa.

El 6 de septiembre de 1994 Velázquez Quiles presentó, por conducto de su representación legal, una Réplica al Informe presentado por el Procurador General, en la cual reconoció su falta de diligencia en el trámite del asunto encomendado, reiteró el hecho de que el querellante no sufrió ningún daño y atribuyó su conducta a una situación emocional por la cual había pasado y de la cual ya se había restablecido. Solicitó que se dejase sin efecto la suspensión indefinida decretada en diciembre de 1993 y que, al momento de imponer la sanción disciplinaria correspondiente, ésta se diese por cumplida en vista al tiempo que llevaba separado de la profesión.

El 21 de octubre de 1994, examinados los documentos sometidos, instruimos al Procurador General que presentase la querella correspondiente. En la querella, el Procurador General reiteró las determinaciones que había sometido en su informe inicial. En su contestación a la querella, Velázquez Quiles aceptó los hechos imputados y manifestó no tener oposición alguna al informe y a la querella presentadas. Además, hizo constar que de las quejas inicialmente investigadas por el Colegio de Abogados de Puerto Rico todas, excepto dos (2), ya habían sido resueltas. Informó también que respecto a la otra queja en su contra presentada ante el Procurador General por el Sr. José Cruz Torres, ésta había sido archivada administrativamente.

El señor Velázquez Quiles sometió junto con su contestación una declaración jurada de la Sra. Carmen Matos Martínez en la cual manifestaba estar satisfecha con la labor profesional realizada por el señor Velázquez Quiles y que éste le había satisfecho la cantidad de cuatrocientos ocheta dólares ($480) en concepto de los intereses que hubiesen devengado los veinte mil dólares ($20,000) de haberse consignado en el tribunal.

Sometió también una evaluación psicológica realizada por el psicólogo clínico Juan R. Caraballo. De dicha evaluación se desprende que durante el período comprendido entre diciembre de 1991 y mayo de 1993 el querellado estuvo bajo tratamiento profesional por padecer de un desorden afectivo bipolar y de depresión. Dicha condición se manifestó mediante estados de ánimo inconsistentes, anergia, apatía, desgano, mutismo, problemas de concentración y de memoria a corto plazo, y cierto menoscabo de sus funciones intelectuales. Cabe señalarse que de dicho informe también surge que, durante este tiempo, el señor Velázquez Quiles confrontó unas situaciones antagónicas agudas entre las que se incluían problemas matrimoniales y serios problemas económicos que lo llevaron a la quiebra. A la fecha del informe —29 de enero de 1994— el psicólogo Caraballo diagnosticó que el querellado se hallaba en total remisión con una prognosis de recuperación positiva.

I

El señor Velázquez Quiles nos solicita que al momento de imponer la sanción correspondiente tomemos en consideración el tiempo, desde diciembre de 1993 hasta el presente, que lleva suspendido de la profesión. Dicho planteamiento, dado el hecho de que han transcurrido cuatro años y medio (4 1/2) desde que decretamos la suspensión, merece ser examinado con detenimiento.

La separación indefinida del señor Velázquez Quiles se debió a que no compareció cuando le requerimos que presentase su contestación a la queja presentada por el señor Matos Martínez. Se le apercibió que de no comparecer se le podrían imponer sanciones disciplinarias sin más citarle ni oírle.

▆▆▆▆ Reiteradamente hemos expresado que seremos estrictos en aquellos casos en que los abogados no contesten nuestras órdenes. No toleraremos la obstinada nega-

tiva de un miembro de nuestro foro a cumplir con las órdenes de este Tribunal. *In re Arroyo Fernández*, 133 D.P.R. 364 (1993); *In re Figueroa Abréu*, 130 D.P.R. 504 (1992). Independientemente de los méritos de las quejas en su contra, el abogado tiene la obligación de responder sin demoras a nuestros requerimientos. La no comparecencia es una falta de respeto hacia los procedimientos de este Tribunal y socava nuestra función reguladora de la profesión. *In re Álvarez Meléndez*, 129 D.P.R. 495 (1991); *In re Velázquez Quiles*, supra.

■ También hemos resuelto que una suspensión previa no torna académica la querella ante nos ni su adjudicación. *In re Vergne Torres y Álvarez Meléndez*, 137 D.P.R. 777 (1995). Procede, pues, que analicemos los hechos ante nos para su adjudicación.

No hay duda, y así lo admitió el querellado, que su conducta en la gestión de la consignación del cheque motivo de la querella fue negligente, y que al mentir a su cliente sobre la consignación, se configuró una violación al Canon 35 del Código de Ética Profesional, *supra*, que dispone que la relación de un abogado con su cliente debe descansar en la sinceridad y honradez. Aún más, de la totalidad del expediente surge que durante 1992 y 1993 el señor Velázquez Quiles incurrió de modo repetitivo en una conducta irresponsable, errática y censurable que dio motivo a varias quejas en su contra.

■ Cabe señalarse que fue durante estos años, según surge de la evaluación psicológica presentada, que el señor Velázquez Quiles atravesó serios problemas emocionales. *Del informe que consta en el expediente* surge el diagnóstico de un desorden afectivo bipolar y de depresión con un menoscabo de sus facultades intelectuales y pérdida de la memoria. En ocasiones anteriores hemos rechazado como atenuante de la conducta del querellado una alegación de padecimientos emocionales o psiquiátricos *cuando del ex-*

*pediente no surge evidencia de dicha condición. In re Fernández Paoli*, 141 D.P.R. 10 (1996).

Con anterioridad a esta fecha su conducta profesional había sido adecuada. A partir de 1994, fecha cuando de acuerdo con la evaluación psicológica sometida el querellado había superado su condición emocional y entrado en remisión, el señor Velázquez Quiles respondió con prontitud a nuestros requerimientos. Además, tomó las medidas necesarias para resolver los problemas causados por su inatención a los asuntos de sus clientes. En octubre de 1996, con motivo de haber mudado su residencia a Ponce, notificó prontamente, de acuerdo con nuestro Reglamento, su cambio de dirección.

Cabe señalarse, además, sin restar seriedad a la falta cometida, que el señor Velázquez Quiles no se apropió del cheque que le fue entregado por su cliente. El cheque no fue canjeado. Su falta consistió en no haber sido diligente en tramitar la consignación y en mentir a su cliente una vez se le cuestionó sobre el paradero del cheque. En este sentido, la situación ante nos es claramente distinguible de aquellas ocurrencias en las que los abogados se han apropiado de modo permanente o temporero de fondos pertenecientes a sus clientes. *In re Fernández Paoli,* supra.

■  Anteriormente hemos determinado que el tiempo de suspensión previo a la adjudicación final de una querella puede ser considerado al imponer la sanción correspondiente. *In re Vergne Torres*, supra. En vista de lo anterior, consideramos que aunque la naturaleza de la falta cometida por el querellado conlleva su separación de la profesión, el tiempo transcurrido desde la suspensión inicial decretada el 8 de diciembre de 1993 debe ser considerado al imponer la sanción por las violaciones éticas que originaron la querella presentada por el Procurador General.

En vista de estas circunstancias particulares, *se ordena*

*la reinstalación del señor Velázquez Quiles al ejercicio de la abogacía y del notariado, que habrá de ser efectiva el 1ro de agosto de 1998.*

*Se dictará la sentencia correspondiente.*