*In re* CARLOS E. SOTO COLÓN t/c/p CARLOS E. SOUTTO COLÓN, querellado.

*Números:* AB-1998-41   CP-2000-004   AB-2001-17   AB-2001-24   AB-2001-41   AB-2001-137        *Resueltos:* 9 de noviembre de 2001

*Gustavo A. Gelpí, Procurador General, Carlos Lugo Fiol, Procurador General, Cynthia Iglesias Quiñones, Procuradora General General Auxiliar, y Rosa N. Russé García, Procuradora General Interina; Carlos Cruz Oliva, pro se; Carlos E. Soto Colón, pro se.*

PER CURIAM: Pendientes de resolverse ante este Tribunal, existen seis (6) procedimientos disciplinarios en contra del Lcdo. Carlos Soto Colón (en adelante Lcdo. Soto o el querellado), también conocido como Carlos Soutto Colón, casos Núms. CP–2000–4, AB–98–140, AB–2001–017, AB–2001–024, AB–2001–041 y AB–2001–0137. A continuación, una breve exposición de los hechos que originaron cada uno de los procedimientos.

A. El caso de conducta profesional, caso Núm. *CP–2000–4*, se originó cuando el Lcdo. Carlos Mondríguez Torres, por sí y en representación de la sociedad de bienes gananciales compuesta por él y su esposa, presentó una demanda de interdicto preliminar y permanente, incumplimiento de contrato y daños y perjuicios en contra del Lcdo. Soto, caso Civil Núm. HDP95–0039, ante el Tribunal de Primera Instancia, Subsección Superior, Sala de Humacao. El Lcdo. Soto, por su parte, presentó una demanda de interdicto preliminar y permanente en contra del licenciado Mondríguez, caso Civil Núm. HPE95–0015, ante el mismo tribunal. Estos casos fueron consolidados.

El Hon. Francisco Viera Cruz, Juez Superior del antedicho tribunal, remitió a este Foro la demanda y demás documentos anexados por el licenciado Mondríguez. En cumplimiento con nuestras órdenes, se nos mantuvo informados de las incidencias procesales.

Luego de varios trámites dentro del pleito, se le anotó la

rebeldía al querellado, por no haber formulado alegación responsiva alguna contra la demanda.

El 24 de febrero de 1997, el Hon. Carlos Soler Aquino, en ese entonces Juez Superior de ese tribunal, dictó sentencia la cual es final y firme por no haber sido recurrida conforme a derecho.[1]

Por otro lado, mediante un recurso instado separadamente, el querellado presentó una Solicitud o Modificación de Acta ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de San Juan, para cambiar su apellido paterno con el cual aparece inscrito en el Registro Demográfico.[2] El tribunal dictó resolución para ordenar que a partir de esa fecha, 3 de octubre de 1997, el nombre del letrado apareciera como Carlos E. Soutto Colón. El 21 de mayo de 1998, ese tribunal emitió sentencia enmendada para ordenar que a partir de ese día el acta de nacimiento del querellado apareciera como Carlos E. Soutto Colón, y para que dicha modificación sólo afectara al querellado y no a su padre.

A raíz de todo ello, el 6 de abril de 2000, el Procurador General de Puerto Rico, en cumplimiento con nuestra Resolución de 5 de noviembre de 1999, presentó una querella contra el Lcdo. Soto. En ella le imputa haber incurrido en conducta profesional antiética al omitir informarle a este Tribunal su cambio de apellido paterno, y haber violado el Preámbulo y los Cánones 12, 9, 19, 20, 18, 23, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Mediante mandamiento debidamente notificado, el 9 de mayo de 2000, este Tribunal le ordenó al querellado, a te-

---

[1] La sentencia adversa al querellado fue notificada a las partes el 3 de marzo de 1997. El Lcdo. Carlos Soto Colón (en adelante el Lcdo. Soto o el querellado) recurrió al Tribunal de Circuito de Apelaciones que desestimó el recurso por no haberse perfeccionado, debido a la ausencia del correspondiente apéndice requerido en el reglamento del tribunal apelativo. El querellado acudió a este Tribunal; el recurso fue denegado. El 28 de agosto de 1997, el querellado presentó una moción de relevo de sentencia ante el Tribunal de Primera Instancia; ésta fue declarada no ha lugar.

[2] Caso Civil Núm. 977873 (506).

nor de la Regla 14(f) de nuestro Reglamento, 4 L.P.R.A. Ap. XXI–A, contestar la querella dentro del término de quince (15) días.

El 1ro de junio de 2000, el querellado solicitó una prórroga para contestar la querella, lo cual le fue concedida, otorgándosele un plazo de treinta (30) días. Sin embargo, el 5 de julio de 2000, el Lcdo. Soto pidió una nueva extensión del término para contestar, por sesenta (60) días adicionales. Concedimos la nueva prórroga solicitada, pero apercibimos al Lcdo. Soto que de no recibirse el escrito en término, se continuarían los procedimientos en su contra sin el beneficio de su contestación, situación que podría conllevar sanciones disciplinarias.

Nuevamente incumplió con nuestras resoluciones y presentó el 1ro de septiembre de 2000 la tercera moción de prórroga. El 22 de septiembre de 2000 denegamos extender el plazo y ordenamos que se continuaran los procedimientos en su contra, interpretando que la falta de contestación a la querella presentada por el Procurador General equivaldría a una negación de los hechos y cargos imputados. Además, se nombró como Comisionada Especial a la Hon. Ygrí Rivera de Martínez, ex juez del Tribunal de Circuito de Apelaciones para que recibiera la prueba y rindiera un informe con sus determinaciones de hechos y de derecho.[3]

A la celebración de la conferencia con antelación a la vista en sus méritos, comparecieron la Procuradora Auxiliar y el querellado, quién expresó que el Lcdo. Johnny Elías no lo representaría en esta etapa de los procedimientos, pero que acudiría a la vista final a pesar de no haber presentado moción para asumir la representación legal. Se le concedieron cinco (5) días al querellado para que el licenciado Elías se expresara con respecto a la representa-

---

[3] Haciendo caso omiso a nuestra orden, el 2 de octubre de 2000, el querellado presentó su contestación a la querella. Ésta fue considerada como no presentada por la Comisionada Especial Hon. Ygrí Rivera de Martínez, en virtud de la orden especificada en el párrafo que antecede.

ción legal del querellado. No se presentó ninguna moción al respecto.

A la vista en sus méritos compareció la Procuradora Auxiliar pero no el querellado ni abogado alguno en su representación.

Luego de varios incidentes procesales, la Hon. Comisionada Especial presentó su informe cuyas determinaciones de hechos son las siguientes.

1. El querellado fue admitido al ejercicio de la abogacía el 13 de enero de 1992 y al ejercicio de la notaría el 8 de noviembre de 1996.

2. El 23 de febrero de 1994, el querellado comenzó a trabajar en la oficina del licenciado Mondríguez Torres.

3. Dichos licenciados realizaron una serie de acuerdos entre los cuales figuraba la entrega al querellado, por parte del licenciado Mondríguez, de alrededor de cuarenta (40) casos para que tramitara las acciones correspondientes en representación de la oficina, y le otorgara al licenciado Mondríguez el cincuenta por ciento (50%) de lo que obtuvieran en honorarios de abogado.

4. A su vez, el querellado le haría entrega del cincuenta por ciento (50%) de honorarios de los casos obtenidos por él.

5. Por considerar que el querellado había dejado de cumplir con los acuerdos entre ambos, el licenciado Mondríguez presentó la demanda que originó este *per curiam*.

6. De la sentencia en rebeldía dictada por el Tribunal de Primera Instancia, el 24 de febrero de 1997, surgen extensas determinaciones de hechos, que la Comisionada Especial reprodujo en su informe.

Las determinaciones de hechos del Tribunal de Primera Instancia más relevantes a este procedimiento son:

8. Desde el mes de julio de 1994 el licenciado Mondríguez trató infructuosamente de reunirse con el licenciado Soto a los fines de discutir el estado de los casos a su cargo, a lo que el demandado respondía que estaba preparando un informe detallado de dichos casos. Antes de ese mes, el licenciado Soto

discutía frecuentemente sus casos con el licenciado Mondríguez y tenía a éste informado del desarrollo de los mismos. Sin embargo, a pesar de que el licenciado Mondríguez le requería informes por escrito sobre el estado y progreso de los casos a su cargo, solo entregó a éste el informe correspondiente a abril de 1994.

9. Durante el verano de 1994 el licenciado Soto mencionó que abriría una cuenta bancaria en el Oriental Bank & Trust, sucursal de Las Piedras, para depositar sumas pagadas por los clientes de la oficina en los casos a su cargo, por concepto de gastos y honorarios a lo cual el licenciado Mondríguez accedió, con la condición de que se auditara dicha cuenta con la frecuencia que fuera necesaria. Sin embargo, el licenciado Soto nunca estuvo disponible para auditar dicha cuenta.

10. Indicando que se proponía trabajar en horas nocturnas y en fines de semana en los expedientes a su cargo, el licenciado Soto se llevó, allá para septiembre de 1994, de la oficina, un gran número de dichos expedientes, para su residencia, según indicó.

11. Desde que el licenciado [S]oto comenzó a llevarse los expedientes a su cargo, poco a poco dejó también de asistir a la oficina. Igualmente dejó de comparecer a las vistas previamente señaladas por el tribunal en los casos a su cargo. También dejó de cumplir con diversas órdenes emitidas por varios tribunales.

12. A partir de septiembre y durante el mes de octubre dejó de comunicarse con sus clientes, los cuales ni recibieron información sobre sus casos ni fueron debidamente atendidos por éste.

13. El licenciado Soto comenzó a evadir al licenciado Mondríguez. Las pocas veces en que se encontraban, el licenciado Mondríguez le requería los informes de los casos a su cargo (informe de estado y progreso), informe económico (de ingresos y gastos) y la información pertinente para auditar la cuenta bancaria. El licenciado Soto respondía que estaba preparando informes detallados de los casos y un informe de la cuenta que se proponía entregar próximamente. A preguntas del licenciado Mondríguez sobre si tenía algún problema, el licenciado Soto respondía en la negativa.

14. Numerosos clientes que habían sido citados a la oficina por el licenciado Soto para el trámite rutinario de sus casos esperaron en vano por éste en las oficinas al acudir a sus citas.

15. El licenciado Mondríguez se vio impedido de evitar o corregir la situación expuesta en vista de que no tenía acceso a los expedientes, por habérselos llevado el licenciado Soto y el que sobreviniera la ausencia de comunicación con el licenciado

Soto: (1) ya no se le conseguía en la casa de su madre en Las Piedras, donde antes vivía, y (2) no había dejado otra dirección o teléfono que no fuera el de su progenitora y su abuelita.

16. El día 3 de noviembre de 1994, el licenciado Mondríguez se encontró al licenciado Soto saliendo del Centro Judicial de Humacao, le hizo señas para que detuviera su vehículo y le requirió una explicación [de] su comportamiento. Acordaron reunirse ese mismo día a las 2:00 de la tarde, en las oficinas del licenciado Mondríguez para discutir la situación. El licenciado Soto llamó al licenciado Mondríguez a eso de las 2:00 de la tarde y le indicó que llegaría más tarde a la reunión. Sin embargo, no compareció ni excusó su incomparecencia. El licenciado Mondríguez esperó por el licenciado Soto hasta casi las 6:00 de la tarde y redactó con fecha de ese día una carta mediante la cual despedía al demandado de su oficina. La carta le fue enviada al Lcdo. Soto varios días después. Se admitió también como parte del Exhibit 8, el acuse de recibo y el recibo de envío.

17. En la carta de despido se le requirió al licenciado Soto que se personara y suscribiera una moción sobre renuncia de representación profesional donde de paso se informaba que el licenciado Mondríguez asumiría la representación profesional del cliente. Se le requirió además, la devolución de los expedientes en su poder.

18. El licenciado Soto Colón nunca fue a la oficina a firmar dichas mociones ni a devolver los expedientes en su poder.

19. Los casos de *Luis Boria v. Ethicon-Johnson & Jonson*, civil número CD94–1338 (401), del Tribunal de Distrito, Sala de Caguas, y el de *Isabel del Valle Garay v. Bauer & Black, Inc.*, civil número CD93–1609, del Tribunal de Distrito, Sala de Humacao, en ocasión de llamarse para vista en su fondo durante la primera semana de noviembre de 1994, fueron desestimados dada la incomparecencia del licenciado Soto. En ninguno de los casos ni s[iq]uiera el licenciado Soto había informado al cliente que ese día estaba señalada la vista de su caso.

20. Varios abogados llamaron a la oficina quejándose de que el licenciado Soto no había contestado interrogatorios, no contestaba sus cartas y mensajes, ni comparecía a deposiciones.

21. El día 15 de noviembre de 1994, el Sr. Francisco Guzmán García, cliente del licenciado Soto Colón y quien tenía una reclamación por despido injustificado en el caso de *Francisco Guzmán García v. Pizza Hut*, civil número CD93–340, en el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Río Grande, visitó las oficinas del licenciado Mondríguez

exponiendo que estaba preocupado porque el licenciado Soto Colón no contestaba sus mensajes ni lo citaba para prepararlo para juicio, siendo ésta su primera experiencia en un Tribunal de Justicia.

22. El licenciado Mondríguez atendió al cliente, pidió a su secretaria Sharon Rodríguez el expediente del caso y la secretaria le informó que ese expediente era uno de los expedientes que se había llevado el Soto. Se le explicó al cliente que en la oficina se desconocía del paradero del licenciado Soto, quien hacía algún tiempo había dejado de vivir en Las Piedras, sin dejar su nueva dirección. Sólo tenía de éste el número de su teléfono celular, el cual siempre estaba apagado. La secretaria llamó en innumerables ocasiones a dicho teléfono hasta que por fin consiguió al licenciado Soto. El licenciado Soto habló con el cliente y le dio varias excusas no aceptadas por éste. Cuando el cliente pasó el teléfono al licenciado Mondríguez para que hablara con el licenciado Soto, éste último cortó la comunicación.

23. La secretaría [sic] le informó al Lcdo. Mondríguez que el Lcdo. Aníbal Escanellas hacía [sic] varios días le estaba dejando mensajes por teléfono al licenciado Soto Colón en relación con este caso.

24. En comunicación con el licenciado Escanellas, el licenciado Mondríguez le explicó la situación y le pidió de favor que se allanara a una suspensión en lo que se localizaba al licenciado Soto, se recuperaba el expediente, y asumía representación legal del cliente, puesto que así había sido solicitado por el cliente. Cuando el licenciado Mondríguez le explicó al licenciado Escanellas que no sabía d[ó]nde conseguir al licenciado Soto, porque se había mudado, el Lcdo. Escanellas le contestó que casualmente había visto al licenciado Soto viviendo en su Condominio en Colina Real, de Cupey. El licenciado Escanellas se allanó a la suspensión, preparando entonces el licenciado Mondríguez, una moción notificando lo anterior al Tribunal de Distrito, Sala de Río Grande y solicitando ... de [ese] modo que el licenciado Mondríguez pudiera representar al cliente en la vista señalada.

25. La Honorable Angela Luisa de Jesús expidió la orden el día 15 de noviembre de 1994, y el día 17 de noviembre de 1994, fue diligenciada la misma por el Sr. José Salvador Torres Cabello en las Oficinas Administrativas del Condominio Colina Real.

. . . . . . . .

32. El licenciado Mondríguez se reunió con la directiva de los trabajadores demandantes que representaba cerca de seiscientos (600) de éstos. Los miembros de la directiva le infor-

maron que el licenciado Soto Colón le había pedido a cada uno cincuenta ($50.00) dólares para gastos. Por lo que según sus cálculos el licenciado Soto tenía en su poder cerca de veintinueve mil ($29,000.00) dólares en giros a su nombre y dinero en efectivo. ([A]lgunos pagaron en efectivo, pero conservaron recibo de la transacción.)

33. El licenciado Mondríguez le explicó a los trabajadores que no tenía un solo informe del licenciado Soto atinente a los gastos de ese caso. Los trabajadores le indicaron al licenciado Mondríguez que el licenciado Soto decía en cada reunión convocada por él para cobrarle a los trabajadores que ese dinero estaba seguro, pues él lo iba a depositar en una cuenta que había abierto en el Oriental Bank & Trust. El licenciado Soto convocaba dichas reuniones en canchas bajo techo y centros culturales y/o comunales debido a lo nutrido de los grupos asistentes. Nunca informó al licenciado Mondríguez la fecha de las reuniones y cuando fue requerido por éste le indicara la fecha y hora de la reunión pautada en la cancha bajo techo de Gurabo no le quedó otra alternativa que informarle. Cuando el licenciado Mondríguez llegó a la reunión ya la misma había concluido, dándose cuenta el licenciado Mondríguez que el licenciado [S]oto le había dicho que la reunión se celebraría una hora después de la hora que realmente había sido convocada por el licenciado Soto. El licenciado Mondríguez le preguntó a un grupo de 5 [ó] 6 trabajadores que encontró conversando frente a la cancha por la naturaleza de la reunión y éstos le dijeron que el abogado les explicó aceleradamente que ellos tenían derecho a demandar al patrono siempre y cuando le entregaran en ese momento cicuenta ($50.00) dólares cada uno. Explicaron además que cuando el Soto Colón recibía el dinero les dijo que ese dinero él lo iba a depositar en una cuenta bancaria que se había abierto en el Oriental Bank & Trust y que el dinero sólo se iba a usar para los gastos del caso. Explicaron los trabajadores que al recibir el dinero el licenciado Soto se marchó de la cancha con mucha prisa. Cuando el demandante se identificó como el licenciado Mondríguez, dos de los trabajadores presentes le manifestaron que estaban en la creencia de que el abogado que iba a dirigir la reunión era el licenciado Mondríguez, pues así se les había informado.

34. Al advenir en conocimiento de que el licenciado Soto había dejado de trabajar para la oficina del licenciado Mondríguez, la directiva acordó enviarle al licenciado Soto una carta requiriéndole la devolución del dinero por él recaudado para gastos, la que fue preparada de inmediato, suscrita por los

directores y enviada con acuse de recibo al licenciado Soto el día 11 de noviembre de 1994.

35. Hasta el día de hoy, el licenciado Sot[o] no ha devuelto el dinero.

.     .     .     .     .     .     .     .

38. De Oriental Leasing se le indicó al licenciado Mondríguez que el licenciado Soto había solicitado un arrendamiento financiero para un vehículo de motor Honda Accord 1994, diciendo que trabajaba en l[a] oficina y se ganaba cincuenta y dos mil ($52,000) dólares. El licenciado Mondríguez indicó que el licenciado Soto nunca se ganó más de mil doscientos ($1,200.00) dólares en un mes a lo que respondieron de Oriental que tenían una carta firmada por el licenciado Mondríguez certificando lo antes dicho. El licenciado Mondríguez solicitó y le fue enviada copia de la carta.

39. Debido a que el licenciado Mondríguez nunca había suscrito una carta diciendo que el licenciado Soto se ganaba cincuenta y dos mil ($52,000) dólares en su oficina, presentó ante la policía una querella por el delito de falsificación contra el licenciado Soto que fue referida posteriormente al Fiscal Rubio Paredes, Fiscal Auxiliar adscrito a la Fiscalía del Distrito de Humacao.

40. Examinados los expedientes entregados por el licenciado Soto y otros que estaban a su cargo, pero fueron devueltos por éste a finales de octubre de 1994, se hicieron los siguientes hallazgos:

a. El licenciado Soto retuvo para sí en el caso de *Paredes y otros v. Redondo Construction y otros*, civil número HDP95–0078, unos cuatrocientos ($400.00) dólares para gastos que nunca fueron utilizados para esos fines. Por ese caso en particular se presentó una demanda de cobro contra el licenciado Soto, (*Nereida Paredes y otros v. Carlos Edgardo Soto Colón*, civil número CM95–08, Tribunal de Primera Instancia, Sala Municipal de Las Piedras) recayendo sentencia declarando con lugar la demanda.

b. El Licenciado Soto no entregó documentos, evidencia e información valiosa de los clientes que son necesarios en la tramitación de sus pleitos. Tales son los casos de *Jorge Ayala y otros v. Westinghouse; Noelia Rivera y otros v. Javier Reyes Mulero, y otros; Juan Francisco Rivera Díaz y otros v. Melba Iris Sierra Torres* y otros casos más.

c. El licenciado Soto no entregó ni rindió cuentas sobre mi[l] ($1,000.00) [d]ólares que fueron cobrados por él en el caso de Enrique Dávila Vargas y que pertenecen al cliente.

41. Al presente, el licenciado Soto Colón retiene los expedientes de los ex-empleados de la planta de Westinghouse de

San Lorenzo, quienes le entregaron cincuenta ($50.00) dólares para gastos cada uno (alrededor de 200 ex-empleados) y documentos relacionados con su reclamación.

. . . . . . . .

44. Salvo los cheques que fueron pagados al Lcdo. Carlos Mondríguez por concepto de su participación de honorarios, que ascienden a mil quinientos ochenta ($1,580.00) dólares los demás cheques girados contra depósitos que provenían de recaudos por concepto de honorarios o retención de gastos de la oficina del licenciado Mondríguez, no corresponden a los propósitos para los cuales estaban destinados esos fondos.

45. Si restamos de las sumas depositadas treinta y seis mil seiscientos veintiún ($36,621.01) [d]ólares con un centavo, lo pagado al licenciado Mondríguez de dichos depósitos, forzoso es concluir que el licenciado Soto retuvo para sí treinta y cinco mil cuarenta y un ($35,041.01) dólares con un centavo considerando tan sólo los fondos depositados en dicha cuenta.

. . . . . . . .

50. Concluimos que el licenciado Soto incumplió su contrato de trabajo con el licenciado Mondríguez y al hacerlo de forma culposa o intencional se apropió o dispuso ilegalmente de por lo menos treinta y cinco mil ($35,000.00) dólares de los fondos de una cuenta destinada para depositar dinero de gastos y honorarios de abogados que no le pertenecí[a]. Informe de la Comisionada Especial Igrí Rivera de Martínez, 29 de junio de 2001, págs. 10–24.

7. Respecto al cambio de apellido, concluye la Hon. Comisionada Especial, que el 3 de octubre de 1997, el Tribunal de Primera Instancia, Sala Superior de San Juan, emitió resolución que a partir de ese día su nombre figuraría como Carlos Soutto Colón. El 21 de mayo de 1998, dicho foro ordenó que se corrigiera el acta de nacimiento.

8. En el procedimiento sobre petición de quiebra presentado ante el foro federal bajo las disposiciones del Capítulo 13 del Código de Quiebras Federal, 11 U.S.C.A. sec. 362 (caso Núm. 98–13792), el Lcdo. Soto no expresó su cambio de apellido.

B. La queja referente al caso Núm. AB–98–140 fue presentada a este Tribunal por el Sr. Carlos Cruz Oliva, de la empresa Elmendorf Color, Inc. El propósito principal de la queja era presentarle a este Foro copia de la sentencia

detallada anteriormente. El señor Cruz Oliva señala, además, el mal desempeño del Lcdo. Soto en el caso *Nereida Rivera v. Elmendorf Colors, Inc.*, caso Civil Núm. EPE 96–0399, en el Tribunal de Primera Instancia, Sala Superior de Caguas.

La Oficina del Procurador presentó una moción informativa el 10 de mayo 1999 a través de la cual nos solicitó que paralizáramos la queja, ya que el querellado era el representante legal de Nereida Rivera, en el caso arriba mencionado, quien teniendo señalada vista evidenciaria para los días 19–23 de julio de 1999, una determinación o recomendación podría incidir negativamente en éste. El 26 de mayo ordenamos la paralización de esta queja hasta que se resolviera el caso Civil Núm. EPE96–0339.

Después de varias órdenes para que las partes nos informen del estado procesal del caso, el 29 de mayo de 2001 emitimos otra resolución en el mismo sentido, para que las partes se expresaran en un término de treinta (30) días.

Compareció el quejoso pero no así el querellado. En vista de su incumplimiento con nuestra orden, emitimos una resolución concediéndole diez (10) días adicionales para que cumpliera con nuestra Resolución de 29 de mayo, bajo el apercibimiento de que su incumplimiento podría acarrear sanciones disciplinarias, incluida la suspensión del ejercicio de la abogacía. Dicha resolución fue diligenciada personalmente, el 15 de agosto de 2001. Hasta el presente, el querellado no ha cumplido la orden ni se ha excusado por ello.

C. La queja caso Núm. *AB–2001–17* fue presentada el 31 de enero de 2001 por el Sr. Antonio Seda Echeverría. En ella éste expresa que el 23 de junio de 2000 contrató los servicios profesionales del Lcdo. Soto para que lo representara en un caso de daños y perjuicios, en contra de Hera Development. El quejoso le ha entregado, a través de un giro postal al querellado, la suma de seiscientos dólares

($600) y sucesivamente le entregó cuatro (4) cuotas de cien dólares ($100) para un total de mil dólares ($1,000), como pago a sus servicios profesionales. El querellado no se ha comunicado con el señor Seda desde la fecha en que se formalizó el contrato.

El quejoso ha tratado en diversas oportunidades de comunicarse con el Lcdo. Soto, pero el número de teléfono celular informado por el querellado ha sido desconectado. A través del Colegio de Abogados, obtuvo un número de teléfono perteneciente a una tal Daisily Negrón, quien le informó ser prima del querellado pero que éste no residía en esa dirección. Esta persona le facilitó el número telefónico de la Sra. Jenny Colón, tía del querellado, quien indicó que a pesar de que el querellado no vivía en esa dirección lo veía regularmente, por lo que le daría el mensaje.

El Colegio de Abogados le suministró al querellado un número de apartado postal, al cual el quejoso le envió una carta solicitándole que se comunicara con él, y que de no hacerlo en veinte (20) días, se consideraba rescindido el contrato, por lo cual el querellado debería devolverle el dinero. El correo trató de entregar la carta en tres (3) fechas distintas pero resultó infructuoso.

El 14 de febrero de 2001 le notificamos al querellado la queja para que compareciera a defenderse.

El 26 de marzo de 2001, en cumplimiento de la Regla 14(d) del Reglamento de este Tribunal, 4 L.P.R.A. Ap. XXI–A, referimos copia del expediente al Procurador General para la correspondiente investigación e informe.

El 25 de abril de 2001, compareció el Procurador General para informar que se le remitió por segunda vez copia de la querella al Lcdo. Soto a las oficinas de Santiago, Malavet & Santiago, calle Sagrado Corazón 470 en Santurce, la cual fue devuelta porque el querellado ya no rendía servicios en esas oficinas desde julio de 2000, y a la vez facilitaron otras direcciones, física y postal, que tenían co-

nocimiento en esas oficinas.(⁴) En este escrito nos solicita el honorable Procurador un término adicional para que conteste el Lcdo. Soto y para la preparación de su informe. Procedimos de acuerdo con lo solicitado en la Resolución de 8 de mayo de 2001. Copia de esta resolución se diligenció personalmente al querellado en la Urbanización Inmaculada en Las Piedras, el 18 de mayo de 2001.

El 19 de junio de 2001, comparece ante nos la Oficina del Procurador General, quien expresa que del silencio del querellado se deducen como ciertas las alegaciones del señor Seda, "de que el abogado se apropió de su dinero bajo falsa representación". Por ser dicha conducta constitutiva de delito, la Oficina del Procurador General refirió el asunto a la Oficina de Investigaciones y Procesamiento Criminal del Departamento de Justicia. Dicho informe fue enviado a la Urbanización Inmaculada por correo certificado con acuse de recibo, el cual fue devuelto.

D. El procedimiento disciplinario AB–2001–24, se originó el 7 de febrero de 2001, por una queja presentada por las Sras. Jenny López, Lisset Oland Sánchez y Crecencia Santos Martínez.

De dicha queja surge que en el mes de abril de 2000, el querellado se personó en la residencia de la señora López para que las querellantes y otras personas firmaran un contrato de servicios legales a nombre del Bufete Santiago, Malavet & Santiago, a quien el querellado representaba. Esa misma noche se le entregó la cantidad de dos mil dólares ($2,000) en cheques y giros a nombre del licenciado Santiago Malavet. El querellado cambió los cheques sin la autorización del licenciado Santiago Malavet, quien no tenía conocimiento de la celebración del contrato. Cuando estas personas se presentaron al Bufete Santiago, Malavet & Santiago, tuvieron conocimiento de que el Lcdo. Soto no

---

(⁴) (1) P.O. BOX 195537, San Juan, P.R. 00919–5537; (2) Urbanización Inmaculada, calle 3 Núm. 56, Las Piedras, P.R. 00771; (3) P.O. BOX 259, Las Piedras, P.R. 00771.

trabajaba ya con la firma. Al comunicarse con el Lcdo. Soto, éste se comprometió a devolver el dinero.[5]

En la vista del caso el 30 de noviembre, el querellado señaló al tribunal que no representaba a las quejosas, que devolvería el dinero, y a esos efectos, solicitaba la dirección de éstas. Sin embargo, no procedió de acuerdo con su compromiso.

Esta queja fue debidamente notificada al querellado. A pedido del Procurador General, el 8 de mayo de 2001, se le concedieron al querellado quince (15) días adicionales para comparecer y contestar la queja. Esta resolución se diligenció personalmente al querellado.

Compareció el Procurador General solicitando que ampliemos el término concedido al Lcdo. Soto para contestar la querella y para presentar su informe luego de presentada la contestación. Accedimos a lo solicitado mediante Resolución de 8 de mayo de 2001 y apercibimos al querellado que su incumplimiento podría conllevar sanciones severas. Esta notificación fue diligenciada personalmente al Lcdo. Soto el 18 de mayo de 2001.

El 19 de junio de 2001 el Procurador General nos presentó su informe en el cual concluye que la renuencia del querellado a contestar evidencia que son ciertas las alegaciones de las querellantes. A raíz de que su conducta no sólo atenta contra los cánones del Código de Ética Profesional, sino que también es constitutiva de delito, remitió el asunto a la Oficina de Investigaciones y Procesamiento Criminal del Departamento de Justicia.

Según nos indica el Procurador General, el antedicho informe fue notificado por correo certificado con acuse de recibo a la misma dirección en donde diligenciamos personalmente al querellado, pero las misivas han sido devueltas.

E. El 21 de febrero de 2001, el Sr. Luis Méndez del

---

[5] También surge de la queja que tomó dinero prestado de una de las personas que firmó el contrato, dinero que tampoco devolvió.

Valle presentó ante este Tribunal una queja en contra del Lcdo. Soto, caso Núm. AB–2001–41. En ésta aduce que el querellado le solicitó tres mil quinientos dólares ($3,500) en préstamo para utilizarlos en un kiosco en la Regata 2000. Llegaron a un acuerdo en el que el quejoso participaría en un treinta y cinco por ciento (35%) de lo producido por éste.

Hasta la fecha el querellado no ha devuelto el dinero, no le devuelve las llamadas, ni ha cursado ninguna comunicación al querellante a pesar de haberle prometido devolvérselo en una oportunidad en que se encontraron por casualidad.

El 28 de febrero de 2001, la Secretaria de este Tribunal cursó una comunicación al querellado requiriéndole su comparecencia a fin de que se expresara en torno a la queja presentada. Esta comunicación nos fue devuelta.

Referimos el asunto a la Oficina del Procurador General, en cumplimiento a lo establecido en la Regla 14(d) de nuestro Reglamento, *supra*. El Procurador volvió a notificarle la querella al Lcdo. Soto, la cual fue devuelta por el correo.

El 9 de mayo de 2001, el Procurador General rindió su Informe, en el cual le imputa al querellado incumplimiento al deber de contestar los requerimientos de este Tribunal.

F. El procedimiento disciplinario caso Núm. AB–2001–137 surgió el 15 de agosto de 2000 de una queja presentada por el Sr. Sigfredo Avilés Ruiz ante la Comisión de Ética del Colegio de Abogados. En la queja alega que él suscribió un contrato de servicios profesionales con el querellado para que lo representara en una querella laboral de discrimen.

Ante alegada crisis económica del querellado para proseguir con los gastos del caso, logró que el quejoso tomará un préstamo de diez mil dólares ($10,000) a su nombre y se lo entregara completo al querellado, bajo la promesa de

que él se haría cargo de los pagos. No sólo no ha pagado las mensualidades del préstamo sino que no ha comparecido a ningún señalamiento del caso ante el tribunal. En la queja solicita que se le devuelva el expediente del caso, el cual contiene numerosos estudios médicos y trámites del descubrimiento de pruebas, y que se dé por revocado el contrato, ya que éste contiene una cláusula de que si se contratan servicios de otro abogado el querellante debe darle al querellado un tercio (1/3) de lo que reciba del pleito.(6)

La Oficina de Ética, en numerosas oportunidades, envió comunicaciones al querellado pero éstas le fueron devueltas (*unclaimed*).(7) Dicha oficina compareció ante nos para que tomemos la correspondiente acción.

A raíz de esta comunicación, mediante la resolución de 27 de junio concedimos al querellado quince (15) días para que compareciera ante la Comisión de Ética y contestara la queja contra él presentada. El querellado no ha cumplido con nuestra orden.

I

Con relación al procedimiento sobre conducta profesional, caso Núm. CP–2000–4, luego de un análisis concienzudo de la querella presentado por el Procurador General, de la Sentencia del Tribunal de Primera Instancia de 24 de

---

(6) El contrato de servicios profesionales dispone:

"———SEPTIMA: si 'EL CLIENTE' decide renunciar a la representación legal del 'EL ABOGADO' los honorarios de este último serán proporcionales al trabajo realizado y el resultado final que se obtenga, pero nunca mas (sic) de la 1/3 parte indicada en el expositivo quinto anterior."

El expositivo quinto establece que los honorarios de abogado serán el 25% de lo que se obtenga de la acción civil incoada judicial o extrajudicialmente.

(7) Según la "Moción Informativa de Incumplimiento del Querellado" presentada ante nos por el Colegio de Abogados, se le envió carta requiriéndole contestación el 31 de agosto de 2000, el 19 de septiembre de 2000, el 4 de octubre de 2000; se le enviaron recordatorios el 17 de noviembre, el 14 de diciembre de 2000 y el 18 de enero de 2001.

febrero de 1997, y del Informe presentado por la Comisionada Especial, concluimos:[8]

### 1. *Incumplimiento con la Regla 9(j) del Reglamento del Tribunal Supremo*

■    Efectivamente, el querellado violó la Regla 9(j) de nuestro Reglamento, 4 L.P.R.A. Ap. XXI–A, la cual establece:

> (j) El(la) Secretario(a) llevará un registro de abogados(as) en el cual inscribirá en orden cronológico a base de la fecha de admisión al ejercicio de la profesión, los nombres de todos(as) los(as) abogados(as) autorizados(as) a postular ante este Tribunal, las fechas en que fueron admitidos al ejercicio de su profesión y su dirección postal y residencial. Llevará, además, un registro de notarios(as) en el que inscribirá el nombre de los(as) abogados(as) autorizados(as) a ejercer el notariado, su residencia y la localización de su oficina notarial. Los(as) notarios(as) deberán registrar en dicho registro su firma, signo, sello y rúbrica. Todo(a) abogado(a) tendrá la obligación de notificar al(a la) Secretario(a) cualquier cambio de dirección postal o física. Todo(a) notario(a) deberá notificar cualquier cambio en la localización de su oficina notarial.

Entendemos que dada la naturaleza de esta regla —mantener un registro de los abogados y notarios que ejercen en esta jurisdicción y mantener al Tribunal informado de los cambios de domicilio— un cambio tan trascendente en un dato relevante como es el apellido de un letrado debe notificarse con premura y diligencia a este Tribunal, pues es un hecho que afecta directamente sobre el Registro de Abogados que lleva este Foro.

---

[8] En ausencia de prejuicio, parcialidad o error manifiesto del Comisionado Especial para apreciar la prueba, no alteraremos las determinaciones de hechos que están sustentadas en evidencia testifical y documental. *In re Anastasio Caraballo*, supra.

Tampoco un tribunal apelativo intervendrá con las determinaciones de hechos que haga el juzgador de los hechos, salvo ante la presencia de pasión, prejuicio, parcialidad o error manifiesto. *Rolón v. Charlie Car Rental, Inc.*, 148 D.P.R. 420 (1999); *Belk v. Martínez*, 146 D.P.R. 215 (1998); *Pueblo v. Bonilla Romero*, 120 D.P.R. 92 (1987); *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984).

■ El que la regla haya consignado expresamente como obligación para los abogados sólo informar el cambio de dirección, obedece a que se trata de un hecho sumamente cotidiano en la vida de los seres humanos. No informar un cambio de apellido, cambio que incide sobre la individualización de los letrados, claramente atenta contra nuestra función reguladora del ejercicio de la abogacía. Ante la duda, el querellado pudo haber consultado a la Secretaria de este Foro.

Es pertinente mencionar que la Hon. Comisionada Especial agrega en su informe que el querellado solicitó darse de baja en la práctica de la notaría, por lo cual ordenamos a la Directora de la Oficina de Inspección de Notarías la investigación correspondiente. Conforme al informe presentado, el querellado solicitó el traslado de su obra notarial el 8 de mayo de 1998; dicha comunicación no evidenciaba la decisión del Tribunal de Primera Instancia pues firmó como Soto, y no se aclaró ese hecho. Tampoco en la carta de 8 de septiembre de 1998, solicitando renuncia a la practica de la notaría, aludió a su cambio de nombre ni en la carta de 31 de octubre en la que notificaba cambio de dirección.

■ El incumplimiento con la Regla 9(j) de nuestro Reglamento, *supra*, es de por sí suficiente para decretar la separación indefinida en el ejercicio de la abogacía. *In re Flores Fernández*, 151 D.P.R. 926 (2000); *In re Miranda Casasnovas et al.*, 147 D.P.R. Ap. (1999); *In re González Goenaga*,

El querellado tuvo varias oportunidades para notificarnos formal o informalmente el cambio de apellido concedido el 3 de octubre de 1997.

No podemos considerar la omisión de dicha información como un mero descuido. El nombre de un abogado es un atributo de su personalidad y de su profesión.

## 2. *Violación al Canon 12 del Código de Ética Profesional*

■ El querellado ha incurrido en conducta profesional violatoria del Canon 12 del Código de Ética Profesional, *supra*, el cual contiene el deber del abogado hacia el tribunal, sus compañeros, las partes y los testigos, de ser puntual en su asistencia, conciso y exacto en el trámite y presentación de las causas, debiendo desplegar las diligencias necesarias para ello. Este deber debe desplegarse en todas las etapas del litigio y cobija el deber de acatar las órdenes de los tribunales. *In re Ayala Torres*, 150 D.P.R. 288 (2000); *Heftler Const. Co. v. Tribunal Superior*, 103 D.P.R. 844, 846 (1975); *In re Pagán Hernández*, 141 D.P.R. 113 (1996); *In re Arroyo Villamil*, 113 D.P.R. 568 (1982).

La determinación de hecho número 11 de la sentencia del Tribunal de Primera Instancia, Sala Superior de Humacao, de 24 de febrero de 1997, transcrita anteriormente, evidencia claramente el quebrantamiento de este canon.

## 3. *Violación al Canon 9 del Código de Ética Profesional*

■ El querellado incurrió en conducta profesional impropia, contraria a lo que postula el Canon 9 del Código de Ética Profesional, *supra*. Este canon impone el deber a los abogados de observar una conducta caracterizada por el mayor respeto para con los tribunales.

La inasistencia, sin justa causa, a los señalamientos de vista en los tribunales, según expuesto en la determinación número 11 de la sentencia aludida, fundamenta nuestra conclusión.

## 4. *Violación al Canon 19 del Código de Ética Profesional*

■ También el Lcdo. Soto Colón ha violado el Canon 19 del Código de Ética Profesional, *supra*, el cual impone el deber de mantener a los clientes informados de todo asunto importante que surja en el desarrollo del caso a él

encomendado. Véanse: *In re Flores Ayffán*, 150 D.P.R. 907 (2000); *In re Verdejo Roque*, 145 D.P.R. 83 (1998); *In re Avilés Vega*, 141 D.P.R. 627 (1996); *In re Acosta Grubb*, 119 D.P.R. 595 (1987); *In re Rosario*, 116 D.P.R. 462 (1985); *In re Cardona Vázquez*, 108 D.P.R. 6 (1978).

Las determinaciones de hechos 12 y 14 de la sentencia antes mencionada ilustran sobre el alto grado de abandono y desidia, inacción y displicencia desplegado por el querellado hacia los casos encomendados por sus clientes.

5. *Violación al Canon 20 del Código de Ética Profesional*

De las determinaciones de hechos 23, 24, 25, 26, 27 y 41 surgen los requerimientos del licenciado Mondríguez, para que el querellado suscribiera las mociones de renuncia de representación legal, para él poder asumirla adecuadamente. Sin embargo, el querellado se mantuvo renuente a ello y tampoco entregó los expedientes solicitados. Este tipo de conducta es violatoria del Canon 20 del Código de Ética Profesional, *supra*, el cual reglamenta lo relativo a la renuncia de la representación legal de los clientes.

Reiteramos que todos los abogados deben desempeñarse con los más altos estándares de diligencia y competencia, desde la aceptación de un caso hasta la aceptación de la renuncia por el tribunal. *In re Acosta Grubb*, supra; *In re García Ortiz*, 133 D.P.R. 666 (1993); *In re Torres Torregrosa*, 149 D.P.R. 85 (1999).

En anteriores pronunciamientos, hemos expresado que en Puerto Rico el expediente pertenece al cliente y no al abogado. *Nassar Rizek v. Hernández*, 123 D.P.R. 360 (1989); *In re Vélez*, 103 D.P.R. 590 (1975). Por lo tanto, cuando un cliente solicita que se le entregue un expediente, el abogado encomendado al caso debe proceder a ello. *In re Avilés Vega*, supra.

### 6. *Violación al Canon 18 del Código de Ética Profesional*

█ El querellado incurrió en conducta violatoria del Canon 18 del Código de Ética Profesional, *supra*, el cual establece que será impropio de un abogado asumir una representación profesional cuando sea consciente de que no puede rendir una labor idónea y que no puede prepararse adecuadamente, sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

La lectura de las determinaciones de hechos del tribunal inferior 19, 20, 21, 24, 27 y 30 demuestran una negligencia inexcusable por el completo abandono de la representación legal que ostentaba en diferentes casos. A raíz de lo cual, en diferentes Salas del Tribunal de Primera Instancia, fueron desestimados casos por no haberse presentado ni excusado a diversos señalamientos para vista en sus méritos, de los cuales tampoco informó a sus clientes.

Respecto a este canon, hemos establecido que más allá de las razones que inducen a un abogado a aceptar un caso, una vez asume la representación legal de un cliente, tiene ante su cliente y ante el tribunal "la responsabilidad indelegable de llevar a cabo esa gestión profesional con el más alto grado de diligencia y competencia posible". *In re Siverio Orta*, 117 D.P.R. 14, 19 (1986). Véanse: *In re Padilla Pérez*, 135 D.P.R. 770 (1994); *In re Pagán Hernández*, supra; *In re Avilés Vega*, supra, pág. 632.

### 7. *Violación al Canon 23 del Código de Ética Profesional*

█ El querellado incurrió en conducta profesional violatoria del Canon 23 del Código de Ética Profesional, *supra*, el cual establece la naturaleza fiduciaria de las relaciones entre abogado y cliente, y exige que tal relación esté fundada en la honradez absoluta. Dicho canon prohíbe, además, mezclar el dinero y otros bienes del cliente que vengan a su posesión con los suyos propios.

Las determinaciones de hechos 31 a 36 y 40 a 45 de la

sentencia a la cual nos hemos referido, bastan para señalar el pobre manejo que tuvo el querellado de los fondos entregados a él por sus clientes, particularmente el caso *Jorge Ayala y otros v. Eaton Corporation y otros*, caso Civil Núm. 94–0113(612). Depositó el dinero recibido para gastos y honorarios de abogados en una cuenta que utilizaba para uso personal, y de esa manera utilizó el dinero recaudado sin rendir cuentas ni a sus clientes ni a la oficina del licenciado Mondríguez. Este tipo de conducta constituye un grave atentado a la relación fiduciaria entre abogado y cliente. Canon 23 del Código de Ética Profesional, *supra*. *In re Ramírez Ferrer*, 147 D.P.R. 607 (1999); *In re Osorio Díaz*, 146 D.P.R. 39 (1998); *In re Morales Soto*, 134 D.P.R. 1012 (1994); *In re Rivera Carmona*, 114 D.P.R. 390 (1983); *In re Félix*, 111 D.P.R. 71 (1981). Conductas impropias de esta naturaleza ameritan la separación del abogado al ejercicio de la profesión. *In re Ramírez Ferrer*, supra; *In re Castro Mesa et al.*, 131 D.P.R. 1037 (1992); *In re Sánchez Ferreri*, 115 D.P.R. 40 (1984).

8. *Violación al Preámbulo y a los Cánones 35 y 38 del Código de Ética Profesional*

De la sentencia del Tribunal de Primera Instancia, en específico de las determinaciones 37 a 39, surge que para finales de octubre de 1994 una representante de Oriental Leasing llamó a la oficina del licenciado Mondríguez para verificar el empleo de Armando Pérez y del Lcdo. Soto. Se le informó que Armando Pérez nunca trabajó allí y que el Lcdo. Soto no estaba trabajando para esa fecha en la oficina. La representante le informó al licenciado Mondríguez que el querellado había solicitado un arrendamiento financiero para un vehículo de motor, aduciendo que devengaba un sueldo de cincuenta y dos mil dólares ($52,000) al año.

El licenciado Mondríguez le replicó que el Lcdo. Soto nunca ganó más de mil doscientos dólares ($1,200)

mensuales. La empresa manifestó que tenía una certificación de empleo firmada por el licenciado Mondríguez en la que informaba el ingreso de cincuenta y dos mil dólares ($52,000).

El licenciado Mondríguez solicitó y obtuvo copia del documento y presentó una querella por el delito de falsificación en contra del querellado. El Sr. Evaristo Álvarez Ghigliotti, del Instituto de Ciencias Forenses, rindió un informe pericial el 20 de marzo de 1995 en el cual concluyó que la firma era con toda probabilidad una simulada de la firma genuina informal del licenciado Mondríguez, pero no pudo especificar si el querellado la hubiese hecho. Ante la ausencia de evidencia suficiente para someter el caso penal, los cargos fueron archivados.

Ante estos hechos, coincidimos con el Procurador General de que independientemente del delito de falsificación, el querellado se valió de un documento que no fue suscrito por su patrono y que contenía información falsa.

▇ El Canon 35 del Código de Ética Profesional, *supra*, impone a los abogados un deber de sinceridad y honradez. *In re Franco Rivera y Massini Soler*, 134 D.P.R. 823 (1993); *In re Cuevas Velázquez*, 151 D.P.R. 593 (2000); *In re Irizarry, González*, 151 D.P.R. 916 (2000). Las obligaciones consagradas en este canon constituyen normas mínimas de conducta que pretenden preservar el honor y la dignidad de la profesión. *In re Martínez, Odell I*, 148 D.P.R. 49 (1999). Por ello, no sólo deben ser observados en el desempeño como abogados en un pleito, sino en toda faceta en la cual se desempeñen. *In re Belk, Serapión*, 148 D.P.R. 685 (1999).

El Canon 38 del Código de Ética Profesional, *supra*, extiende la obligación de los abogados de conducirse en forma digna y honrada a su vida privada. *In re Roldán Figueroa*, 106 D.P.R. 4 (1977).

De todo lo expuesto surge que el querellado violó el Canon 35 del Código de Ética Profesional, *supra*, que exige

del abogado sinceridad y honradez; el Preámbulo de los Cánones del Código de Ética Profesional, donde se consigna la importancia de la fe en la justicia como factor determinante de convivencia social, y el Canon 38 del Código de Ética Profesional, *supra*, el cual, entre otras cosas, dispone el deber del abogado de evitar hasta la apariencia de conducta profesional impropia.

Las determinaciones de hechos de la sentencia mencionada, merecedora de deferencia y respeto, y que sirvió de base a este procedimiento, constituyen suficiente fundamento para el resultado obtenido. Lo expresado en cada una de ellas plasma el quebranto inexcusable por parte del querellado a sus obligaciones, y un craso incumplimiento con la responsabilidad que pesa sobre sus hombros, quebrantando de esa manera la fe y la confianza depositadas por la sociedad en los abogados. No hay duda de que la fe en la justicia se considera un factor determinante de convivencia social y para ello, instituir y mantener un orden jurídico íntegro y eficaz es fundamental. Preámbulo de los Cánones del Código de Ética Profesional.

## II

Respecto de los restantes procedimientos disciplinarios, el menosprecio brindado a nuestras órdenes es alarmante.

En incontables ocasiones nos hemos expresado con relación al deber de la clase togada de responder con premura y diligencia a nuestros requerimientos relacionados con las quejas sobre su conducta profesional. *In re Cuevas Velázquez*, supra; *In re Arroyo Rivera*, 148 D.P.R. 354 (1999); *In re Negrón Negrón*, 146 DP.R. 928 (1998); *In re Vargas Soto*, 146 D.P.R. 55 (1998); *In re Velázquez Quiles*, 146 D.P.R. 30 (1998); *In re Guemárez Santiago I*, 146 D.P.R. 27 (1998); *In re Pérez Benabe*, 133 D.P.R. 361 (1993); *In re Colón Torres*, 129 D.P.R. 490 (1991).

Encontramos incomprensible y obstinada la negativa de un miembro de la profesión de cumplir con nuestras órdenes. *In re Nicot Santana*, 129 D.P.R. 717 (1992). Por lo cual, le hemos impuesto severas sanciones. *In re Melecio Morales*, 144 D.P.R. 824 (1998).

El patrón de incumplimiento y dejadez a nuestras órdenes en la esfera disciplinaria es incompatible con el ejercicio de la profesión de abogado. *In re Vargas Soto*, 146 D.P.R. 55 (1998); *In re Castrillón Ramírez*, 143 D.P.R. 74 (1997).

Las violaciones reiteradas a los cánones del Código de Ética Profesional y los constantes y reiterados incumplimientos con nuestras órdenes ameritan que el querellado sea separado indefinidamente del ejercicio de la profesión de abogado.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri no intervino.